STATE of Minnesota, Respondent,

v.

William Fredrick RODEN, Appellant.

No. C1–85–740.

Court of Appeals of Minnesota.

Jan. 21, 1986.

Review Granted March 14, 1986.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, David C. Johnson, Koochiching Co. Atty., International Falls, for respondent.

C. Paul Jones, Public Defender, Laura S. Underkuffler, Asst. State Public Defender, Minneapolis, for appellant.

Heard, considered and decided by POPO-VICH, C.J., and WOZNIAK and SEDG-WICK, JJ.

## OPINION

SEDGWICK, Judge.

Appellant William Roden was convicted of theft by check in an amount greater than $250 but not more than $2,500 in violation of Minn.Stat. § 609.52, subd. 2(3)(a) (1984) in connection with a check kiting scheme. We affirm.

## FACTS

Appellant operated a business known as Kabetogoma Guide Service (KGS). In November 1984, he opened a checking account in that name at First National Bank of International Falls with an initial deposit of $500. Several checks were drawn on the account resulting in overdrafts. The bank initially honored some of them but later began returning them. Appellant was sent several overdraft notices around December 13. Keith Sutherland, vice president of the bank, was unable to contact appellant until December 19 when he saw him at a cafe.

At that time, appellant told Sutherland he had sold a motor from his boat and had deposited the proceeds of $3,000. When Sutherland returned to the bank he found no record of the deposit.

On December 21 appellant opened a business checking account under "Borderland Wildlife Association" at the Farmers and Merchants State Bank of Cook, Minnesota. The initial deposit was a $124 check drawn on the KGS account at First National Bank. No other deposit was made in this account. On that day a $3,000 check was

deposited into the KGS account at First National Bank drawn on the account at the Cook bank.

The following Monday, December 24, the $3,000 check was presented for payment at the Cook bank and was returned for insufficient funds. This was received by the First National Bank on December 31. Pursuant to customary banking practice, it was presented a second time for payment. The check was again dishonored and returned to First National on January 9, 1985.

In the meantime, on December 24 appellant purchased a snowmobile from Badiuk Equipment, Ltd. of Fort Frances, Ontario, for $3,441.52. He paid by a check drawn on the KGS account. Appellant returned the machine on December 29 because of an engine problem and received two snowmobiles for the same price plus $1,775 which he paid by another check drawn on the KGS account. Appellant's checks were dishonored. When reached by Badiuk's bookkeeper on January 9, appellant stated there was a mix-up which would be straightened out that day and he promised to bring a cashier's check. He never did. Badiuks drove to Lake Kabetogama and demanded the money or the snowmobiles. Appellant called Badiuk's bookkeeper and told her he was getting a deposit transferred into KGS from Minneapolis. The bookkeeper called Sutherland and learned that no money had been transferred from Minneapolis. Appellant told Badiuk he would be in with a certified check. Badiuk repossessed the snowmobiles. Appellant never sent a certified check.

When Sutherland asked about the $2,000 overdraft, appellant told Sutherland he sold his boat and motor for $11,500, but was given a bad check and an unidentified buyer was supposed to wire the money. Appellant said he just bought a new boat and motor for cash and that he would put it in Sutherland's yard to cover the overdrafts. The bank later attached appellant's boat, but it was a used boat.

Appellant testified that he bought a boat and 150 horsepower motor in Minneapolis in June 1984 and used them over the summer for his business. In the fall he decided to promote KGS into a winter snowmobiling enterprise. He also decided to replace his motor and made arrangements with Voyager Marina to sell it. He claimed he was told he had an offer of $4,200 around December 1, but acknowledged he never counted on receiving the money.

Appellant testified that later he met a man named Joe Sender in a bar who agreed to buy the motor, sight unseen, for $3,500. He stated Sender agreed to deposit the money directly into an account appellant was opening in Cook. According to appellant, Sender also agreed to buy appellant's boat, sight unseen, for $11,500 and agreed to wire the money to appellant's KGS account.

Appellant said he felt comfortable writing checks for thousands of dollars based on Sender's representations. He acknowledged when he deposited the $3,000 check in the KGS account on December 21 that it was not covered. He knew when he opened the Cook account for $124 the KGS account was overdrawn. Appellant acknowledged he had a prior misdemeanor conviction for bank larceny.

The primary issue was whether appellant had the requisite intent to commit theft by check.

## ISSUES

1. Were the trial court's instructions on intent erroneous?

2. Did the trial court abuse its discretion in refusing to give a requested instruction on a lesser offense of issuing a dishonored check?

3. Was appellant deprived of a fair trial because of errors that occurred during trial?

4. Was the evidence sufficient to sustain appellant's conviction?

## ANALYSIS

### I.

The trial court instructed the jury

Definition of intent, intentionally. Intentionally means that the actor either had a purpose to do the thing or to cause the results specified or believes that his act, if successful, would cause that result. In addition, the actor must have knowledge of those facts which are necessary to make his conduct criminal.

Intent is something that exists in a person's mind. It is seldom, if ever, that a person's intent can be proven by direct evidence. The intent may be inferred by the nature of the acts, what the defendant did, what the defendant said and how the defendant acted.

Generally it may be inferred that a person intends the acts which he or she voluntarily performs.

■ Appellant did not object and did not assign this instruction as error in a motion for a new trial. The general rule that appellant has waived his right to raise this on appeal by failing to raise this issue earlier is applicable. *State v. Laforge,* 347 N.W.2d 247, 251 (Minn.1984); Minn.R. Crim.P. 26.03, subd. 18(3).

■ Only when the error is one of fundamental law or controlling principle and substantially and materially prejudices the defendant's rights will the court ignore this general rule. The instruction complained of here is permissive in nature. *Francis v. Franklin,* —— U.S. ——, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985). *See Laforge,* 347 N.W.2d at 253; *State v. Williams,* 324 N.W.2d 154, 160 (Minn.1982); *State v. Peterson,* 375 N.W.2d 93 (Minn.Ct.App.1985). Appellant contends the charged crime is a specific intent offense and that the use of "may be inferred" impermissibly shifted the burden of proof to appellant. The prosecutor's closing argument, contrary to appellant's assertion, did not allude to this "presumption;" rather, he repeatedly referred to the State's burden of proof.

■ We cannot read one single instruction in isolation but must view the entire charge. *Laforge,* 347 N.W.2d at 253 (citations omitted). The other instructions on the elements of theft by check clearly

indicate that the jury must find appellant intentionally issued the checks, that he must have known or believed he was not entitled to issue the checks and intended to defraud by intending the checks would never be paid, and that he intended the victims believe he was entitled to issue the checks. When read as a whole, the instructions were adequate.

## II.

1. Appellant requested the following instruction on intent:

> In order to find defendant guilty of Theft by False Representation it is essential that you find that he not only had knowledge of the insufficiency of his funds but also that defendant intended to defraud. If you find that defendant did not have an intent to defraud, then you must find him not guilty of Theft by False Representation.

Instead, the trial court gave the following instruction, patterned on CRIMJIG 16.06:

> Defendant must have known or believed that he was not entitled to issue said checks and at the time of issuing said checks the defendant must have intended to defraud the 1st National Bank of International Falls and Badiuks and others by intending that the check never would be paid and that the 1st National Bank of International Falls and Badiuks and others be permanently deprived of his or its property.

■ The trial court need not give a requested instruction if the substance of it is already contained in the court's charge. *State v. Daniels,* 361 N.W.2d 819, 832 (Minn.1985) (citation omitted). The court's instruction more closely tracked the statute and was superior to appellant's requested instruction. The trial court did not abuse its discretion in refusing to give appellant's requested instruction. *Id.* at 831.

2. Appellant claims the trial court erred by refusing his requested instruction on the misdemeanor offense of issuing a dishonored check as a lesser included offense.

The trial court is required to instruct the jury on a lesser offense "if the offense is a lesser included offense of the crime charged, and if there is evidence which produces a rational basis for a verdict acquitting the defendant of the offense charged and convicting of the lesser included offense." *State v. Coleman*, 373 N.W.2d 777, 780 (Minn.1985).

■ In determining whether an offense is a lesser included offense, the statutory elements of the relevant offenses, rather than the facts of a particular case, must be examined. *Id.* at 780–81 (citation omitted); *State v. Gayles*, 327 N.W.2d 1, 3 (Minn. 1982). If a person can commit the greater offense, as legally defined, without committing the lesser offense, as legally defined, the lesser offense is not necessarily included within the greater offense. *State v. Kinsky*, 348 N.W.2d 319, 326 (Minn.1984).

■ A person is guilty of the misdemeanor offense of issuing a dishonored check when a person "issues a check which, at the time of issuance, he intends shall not be paid." Minn.Stat. § 609.535, subd. 2 (1984). The greater offense of theft by check is committed if one:

Obtains for himself or another the possession, custody or title to property of or performance of services by a third person by intentionally deceiving him with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made. "False representation" includes without limitation:

(a) The issuance of a check, draft, or order for the payment of money or the delivery of property knowing that he is not entitled to draw upon the drawee therefor or to order the payment or delivery thereof * * *.

Minn.Stat. § 609.52, subd. 2(3)(a). A comparison of the two offenses shows that a person can commit theft by check without committing the lesser crime of issuance of a dishonored check. For instance, to prove theft by check it is not necessary to prove issuance of a dishonored check. Also, theft by check applies to any type of check

whereas the misdemeanor offense does not apply to postdated checks or to checks given for past consideration. Minn.Stat. § 609.535, subd. 5 (1984).

The trial court did not abuse its discretion in refusing to give appellant's requested instruction on the misdemeanor offense of issuing a dishonored check.

**III.**

In denying appellant's motion for a new trial, the trial court correctly noted:

The courts have stated on numerous occasions that a Defendant is entitled to a fair trial, but not a perfect one. Because of human involvement, no criminal proceeding is likely to be completely free of defects, irregularities or errors. Only those of such character as prejudice substantial rights justify granting a new trial.

*See State v. Southard*, 360 N.W.2d 376, 383 (Minn.Ct.App.1985); *State v. Mastrian*, 285 Minn. 51, 75, 171 N.W.2d 695, 710 (1969), *cert. denied* 397 U.S. 1049, 90 S.Ct. 1381, 25 L.Ed.2d 662 (1970). With this standard in mind, we examine appellant's allegations of error.

1. In his opening statement the prosecutor stated that Keith Sutherland would testify that appellant told him that he did not have a social security number because he is from West Germany. Defense counsel's objection was overruled. At trial Sutherland stated that he did not realize that the bank did not have a social security number for appellant until just before trial. Appellant claims this opening statement was improper.

■ In *Tucker v. State*, 309 Minn. 482, 486, 245 N.W.2d 199, 202 (1976), the supreme court restated the applicable standards for permissible prosecutorial opening statements:

The prosecution may outline the facts in the opening statement which he expects to prove to aid the jury in following the testimony. This statement is not evidence but a recital of factual claims expressed with an intention and expectation

that testimony will be offered and received to support them. *If the facts are stated in good faith with reasonable grounds to believe that the evidence to be offered in proof of such facts is admissible, no error is committed.* (Emphasis original). The trial court concluded no error occurred. We agree. Appellant failed to show the prosecutor acted unreasonably or in bad faith. Further, the reference in the opening statement was brief and without the possibility of any significant influence on the jury.

2. Sutherland, in response to whether he ever discussed with appellant why no social security number appeared on his records, replied "No. That was not discovered until after the time he was jailed." Defense counsel's motions to strike and to give a cautionary instruction were immediately granted.

Sutherland's answer was non-responsive but was not willfully or intentionally elicited. Any prejudice to appellant was quickly diminished by the trial court's action.

3. Sutherland stated at one point that appellant gave him "one of his cards from his purported company in West Germany." Appellant's motion to strike was overruled. Appellant's contention that this reference to a "purported company" tended to ridicule him is without merit as the statement was innocuous and isolated.

4. A cashier at the Cook bank was asked why appellant's account was closed. The transcript shows his response was "Because Mr. Sutherland informed me that he had discovered that there was a kike on this account."

The State contends that this is merely a typographical error in the transcript and that the witness was referring to a check "kite." From our reading of the entire transcript, this appears to be a logical explanation. However, the parties should have handled this pursuant to Minn.R.Civ. App.P. 110.05 entitled "Correction or Modification of the Record" which directs that claimed differences occurring in the record be submitted to the trial court for determination.

5. Appellant asserts that the prosecutor referred to him as "Mr. Rodent" on at least three occasions. This claim is unsupported by the record. The only record of this incident appears in an affidavit by appellant attached to his motion for a new trial. In denying appellant's new trial motion, the trial court did not indicate whether the prosecutor did refer to appellant as Mr. Rodent. The parties did not seek correction or modification of the record pursuant to Minn.R.Civ.App.P. 110.-05. We cannot state that any misconduct occurred in this case.

6. Appellant also complains about the prosecutor's comment that appellant failed to call Joe Sender as a witness to substantiate his story. It is improper to comment on a defendant's failure to call a witness. *State v. Fields,* 306 Minn. 521, 522, 237 N.W.2d 634 (1976); *State v. Walker,* 372 N.W.2d 743, 746 (Minn.Ct.App. 1985). However, appellant did not object, but instead chose to counterargue. *State v. Whisonant,* 331 N.W.2d 766, 769 (Minn. 1983). Defense counsel stated "The State made a big point by saying that why didn't Mr. Roden get some witnesses in here to back up his story. The State, I think, had things reversed here. Mr. Roden has no burden of proving anything here, it is the State's job to produce the evidence and to prove Mr. Roden guilty beyond a reasonable doubt." Appellant is not entitled to a new trial on this ground.

### IV.

While appellant argued that he merely used bad business judgment, there was sufficient evidence for the jury to conclude that appellant acted with intent to defraud in his dealings and was guilty of theft by check.

### DECISION

Appellant is not entitled to a new trial based on errors in instructions or misconduct during trial. The evidence was suffi-

cient to sustain his conviction of theft by check.

Affirmed.