**WESTERN WORLD INSURANCE COMPANY, Appellant,**

v.

**ANOTHEN, INC., Defendant and Third Party Plaintiff, Respondent,**

and

**Ruth Nagel, Respondent,**

**Glen Kindt, Third Party Defendant, Respondent.**

No. C6–86–226.

Court of Appeals of Minnesota.

July 29, 1986.

Stephen J. Foley, Minneapolis, for appellant.

Ronald R. Frauenshuh, Jr., Ortonville, for defendant and third party plaintiff, respondent.

Richard S. Roberts, Wheaton, for respondent.

Paul E. Stoneberg, Marshall, for third party defendant, respondent.

Heard, considered and decided by NIER-ENGARTEN, P.J., and LANSING and HUSPENI, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellant Western World Insurance Company commenced this declaratory judgment action against respondent Anothen. Inc. to determine coverage under a professional liability insurance policy. On cross-motions for summary judgment, the trial court held that the policy issued by Western World provided coverage and that Western World had a duty to defend and indemnify Anothen in a lawsuit against Anothen commenced by a third party. Western World appeals.

## FACTS

Anothen, Inc. is a chemical dependency center located in Ortonville, Minnesota. Respondent Ruth Nagel, a registered nurse employed by Ortonville Area Health Services, voluntarily admitted herself to the center on April 20, 1983. Anothen counselors developed a treatment plan for Nagel the objective of which was, in part, for Nagel to "[a]cknowledge and affirm *specific* abuse situations." (Emphasis in original). The method of achieving this goal called for Nagel to "[s]pecifically list situations and conditions involving dishonesty with abuse of pills/alcohol at *work* and in other settings." (Emphasis in original). The treatment plan described the method of measurement for this particular goal as "[r]eading in patient/family group and at monthly nurses meetings at the hospital."

During her stay at the treatment facility, Nagel apparently admitted withholding medications from hospital patients and keeping the medications for herself as well as stealing drugs from the hospital. The treatment counselors informed her employer of these admissions and subsequently Nagel's employment was terminated. In addition, the Minnesota Board of Nursing revoked her license to practice as a registered nurse.

Nagel sued Anothen, alleging that the disclosure of privileged information to her employer pertaining to her chemical de-

pendency was negligent and in violation of state and federal law. Nagel sought compensatory damages, punitive damages, and attorney's fees.

Anothen tendered the defense of the action to its professional liability insurer, Western World. Western World refused to defend and denied coverage on the ground that the disclosure of privileged information regarding Nagel's chemical dependency did not constitute the rendering of or failing to render professional services within the meaning of the policy. Western World denied coverage for the second reason that the disclosure of privileged information was an invasion of privacy, and such claims were specifically excluded from coverage under the policy. Western World denied coverage for the punitive damage claim on the ground that a specific policy exclusion excluded coverage for punitive damages.

Anothen claimed that the disclosures to Nagel's employer were a part of her treatment, and thus, a professional service. The trial court found coverage and declared that Western World had a duty to defend and indemnify Anothen. Judgment was entered on January 16, 1986.

On February 25, 1986, the deposition of Richard Nankivel, the counselor responsible for Nagel's treatment during her stay at the center, was taken as part of the discovery in Nagel's underlying lawsuit against Anothen. The counselor testified that Nagel signed releases authorizing Anothen to disclose to her employer her "treatment progress," which, in the counselor's opinion, included disclosure of specific instances of conduct as a part of Nagel's treatment.

Anothen moved pursuant to Rule 110.05 of the Minnesota Rules of Civil Appellate Procedure to include Nankivel's deposition in the trial court record. Although the trial court stated that the deposition was not a part of the record upon which it based its decision, the trial court ordered the trial court record to be "supplemented" by the deposition pursuant to Rule 110.05 of the Rules of Civil Appellate Procedure. The court added that if the court of appeals "feels that the trial court should consider the deposition, they can remand the case for that purpose."

Western World appeals from the judgment entered on January 16, 1986.

### ISSUES

1. Should the deposition of Richard Nankivel be stricken from the record?

2. Was Anothen entitled to summary judgment as a matter of law?

### ANALYSIS

### I

█ The trial court included Nankivel's deposition in the trial court record pursuant to Rule 110.05 of the Minnesota Rules of Civil Appellate Procedure. It should not have. Rule 110.05 is limited to correction of the record so that it accurately reflects anything of material value that was omitted from the record by error or accident or is misstated in it.[1] In correcting an omission or misstatement, a trial court may supplement the record. Clearly, the trial court was not making the record conform to what happened at trial or correcting a mistake or omission. *See American Family Mutual Insurance Co. v. Horejsi*, 302 Minn. 540, 541, 224 N.W.2d 356, 357 (1974)

1. Rule 110.05, entitled "Correction or Modification of the Record," provides as follows:

*If any difference arises as to whether the record truly discloses what occurred in the trial court,* the difference shall be submitted to and determined by the trial court and the record made to conform. *If anything material to either party is omitted from the record by error or accident or is misstated in it,* the parties by stipulation, or the trial court, either

before or after the record is transmitted to the appellate court, or the appellate court, on motion by a party or on its own initiative, *may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be approved and transmitted.* All other questions as to the form and content of the record shall be presented to the appellate court.
Minn.R.Civ.App.P. 110.05 (emphasis added.)

(Rule 110.05 used to correct a mistake of fact); *State v. Roden,* 380 N.W.2d 520, 526 (Minn.Ct.App.1986) (Rule 110.05 should have been used to correct typographical error).

The general rule is that an appellate court must decide an appeal based "solely upon the evidence actually presented to the trial court and shown by the record on appeal." *Holtberg v. Bommersbach,* 235 Minn. 553, 554, 51 N.W.2d 586, 587 (1952) (footnote omitted). Nankivel's deposition cannot constitute part of the trial court record for purposes of our review.

## II

■ On appeal, the function of a court reviewing a summary judgment is to determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The reviewing court must view the facts in a light most favorable to the losing party. *Twin City Construction Co. v. ITT Industrial Credit Co.,* 358 N.W.2d 716, 718 (Minn.Ct.App.1984). Moreover, "if any doubt exists as to the existence of a genuine issue as to a material fact, the doubt must be resolved in favor of finding that the fact issue exists." *Rathbun v. W.T. Grant Company,* 300 Minn. 223, 230, 219 N.W.2d 641, 646 (1974).

The policy issued by Western World provides that Western World will pay on behalf of Anothen:

> all sums which the insured shall become legally obligated to pay as damages because of liability arising out of any negligent act, error or omission in rendering or failure to render *professional services* * * *.

(Emphasis added.) The policy does not apply to "actions for libel, slander, *invasion of privacy,* assault or battery or conversion" or any claim for punitive damages. (Emphasis added).

Western World maintains that the rendering of "professional services" arises out of a vocation or occupation involving specialized knowledge or training, *see Marx v.* *Hartford Accident and Indemnity Co.,* 183 Neb. 12, 14, 157 N.W.2d 870, 871–72 (1968), while here, no specialized skill or knowledge was utilized in the act of disclosure. Moreover, Western World claims that nothing in the record, absent the counselor's deposition, provides evidence that as a part of Nagel's treatment, Anothen was to disclose information concerning specific incidents of Nagel's conduct to Nagel's employer.

Even assuming Anothen's acts can somehow be characterized as the rendition of professional services, Western World contends the policy exclusion of actions for invasions of privacy applies because Nagel's cause of action against Anothen is predicated on her statutory right to privacy. As to the claim for punitive damages, Anothen admitted at oral argument that the policy clearly excludes coverage.

Anothen and the other respondents contend that the disclosure to Nagel's employer was made after counselors exercised their professional judgment and cannot be separated from the specialized knowledge which was utilized. In making this contention, Nagel relies heavily on the counselor's deposition testimony (to show the alleged interrelationship between Nagel's therapy and the disclosure made to her employer), which, as we have pointed out, cannot be considered as part of the record in these summary disposition proceedings.

Respondents further argue that Nagel's action is based on negligent disclosure (malpractice) and breach of confidentiality, both of which are within the insuring clause coverage. Nagel also asserts that the testimony of her supervisor taken during an unemployment hearing, at which her supervisor stated that the counselors recommended that Nagel lose her job in order for her to lose something tangible, provides sufficient evidence that disclosure was an integral part of Nagel's treatment.

Western World claims that Anothen's actions constituted an invasion of privacy, thereby triggering a policy exclusion. The respondents assert, in contrast, that Anoth-

en's actions did not amount to an invasion of privacy and that Nagel's cause of action against Anothen is not founded on such a theory. We conclude that genuine issues of material fact exist as to whether Anothen committed an invasion of Nagel's privacy. The trial court improperly entered summary judgment for Anothen.

## DECISION

The deposition of Nankivel cannot constitute part of the trial record. The trial court improperly entered summary judgment against Western World.

Reversed.