STATE of Minnesota, Appellant,

v.

Maximo RECIO–ARECIBIA,
Respondent.

No. C8–86–1815.

Court of Appeals of Minnesota.

April 21, 1987.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for appellant.

Salvador Rosas, Neighborhood Justice Center, St. Paul, for respondent.

Considered and decided by CRIPPEN, P.J., and WOZNIAK and STONE *, JJ., with oral argument waived.

## OPINION

STONE, Judge.

This appeal is from a pretrial order suppressing a statement made by the respon-

* Acting as judge of the Court of Appeals by ap-

dent during in-custody interrogation conducted through an interpreter. The State appeals, claiming suppression was erroneous and will have a critical impact on the outcome of the trial. *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977). We find no showing of critical impact and affirm the trial court.

## FACTS

Respondent Maximo Recio-Arecibia was arrested on August 14, 1987 and charged with second-degree criminal sexual conduct for alleged sexual contact with a female under the age of 13. *See* Minn.Stat. § 609.343, subd. 1(a) (1986).

The complainant told police she had just broken up a fight between two children in the courtyard of the apartment complex where she lived. A man was sitting nearby with a dog. This man asked her what her name was. He then pushed her against a tree and fondled her until she was able to escape. She ran to her grandmother's residence, where her aunt, who was visiting, called the police.

Arecibia was at the scene when police arrived. He had a dog chain in his hand. The alleged victim was at her grandmother's, a half-block away. She described the offense, and then, from a quarter block away, pointed out Arecibia as the perpetrator. When Arecibia had been arrested and placed in the squad car, she was brought up to the car and again positively identified him.

The police informed Arecibia, in English, of the reason for his arrest. Arecibia replied, "no—me no crazy." He was given his *Miranda* rights, in English, and taken to headquarters for booking. He was not questioned further.

The following day, police interviewed Arecibia in the jail with the help of a Spanish-speaking officer, Sergeant Renteria. Renteria had served as an interpreter for the department about 60 or 70 times. Arecibia was given his *Miranda* warning in Spanish and agreed to discuss the case.

pointment pursuant to Minn. Const. art. 6, § 2.

Renteria had not been administered an oath to faithfully interpret the interview.

According to the police report, the statement Arecibia gave was the following:

Maximo stated he was outside playing with his cousin[']s puppy with several children. A black girl stopped and also played with the puppy. He thought she also understood spanish so he talked to her, but she did not respond. [H]e further denied touching the girl, or any girl. He stated she was lying. He stated he did not know her, nor did he know why she would lie about him.

The trial court denied Arecibia's motions to suppress the on-the-scene identification and the volunteered statement at the scene, "no—me no crazy." The court granted the motion to suppress the in-custody statement based on the failure to administer an oath to the translator, Renteria. The court relied on this court's recent opinion, *State v. Mitjans*, 394 N.W.2d 221 (Minn.Ct.App. 1986), *pet. for rev. granted,* (Minn. Dec. 12, 1986).

The prosecution has identified five possible witnesses at trial: the alleged victim and her father and aunt, and the police officers. The defense has disclosed four possible witnesses: Arecibia's cousin, a neighbor who was present at the scene, a man who translated for police on the scene and a child.

## ISSUE

Has the State shown suppression of the statement would have a critical impact on the outcome of the trial?

## ANALYSIS

 On an appeal from a pretrial order, the State is required to demonstrate "clearly and unequivocally" that the trial court has erred and that, unless reversed, the decision would have a "critical impact" on the trial outcome. *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977). Critical impact is shown where the suppression of evidence "significantly reduces the likelihood of a successful prosecution." *State v. Kim*, 398 N.W.2d 544, 551 (Minn.1987).

The State contends this case is substantially identical to *State v. Anderson,* 396 N.W.2d 564 (Minn.1986), *rev'g,* 380 N.W.2d 165 (Minn.Ct.App.1986). In *Anderson,* however, the defendant made a "confession," allegedly in order to obtain treatment for chemical dependency. Here, Arecibia made a prompt denial of the first accusation, which he again denied in the translated statement. The statement, moreover, does not establish facts which cannot otherwise be reasonably developed. Thus, *Anderson* does not oppose, let alone preclude, the result reached here.

Corroboration of the details of a child victim's story in some cases may have a critical impact. *See State v. Hanson,* 355 N.W.2d 328, 329 (Minn.Ct.App.1984) (suppression of sexually explicit magazines mentioned in child victim's story held to have a critical impact). Such an impact is not shown here.

Arecibi admitted being in the presence of the alleged victim and speaking to her (in Spanish). However, the police found him on the scene, and the statements of his own witnesses place him there. He admitted having a puppy with him, but one of his witnesses has stated the same, and police found him with a dog chain in his hand. Arecibia's admission that he spoke with the girl could conceivably be significant, but the State has not demonstrated in what way. Essentially, Arecibia's oral statement was exculpatory.

We do not reach the issue whether the interpreting of Arecibia's in-custody interrogation complied with Minn.Stat. §§ 611.-30–.33 (1986).

## DECISION

The State has not shown suppression of the statement would have a critical impact.

Affirmed.