**STATE of Minnesota, Appellant,**

v.

**Russ Allen RONNEBAUM, Respondent.**

No. CX–89–1068.

Court of Appeals of Minnesota.

Oct. 17, 1989.

Review Granted Dec. 8, 1989.

Hubert H. Humphrey, III, Atty. Gen., Wm. F. Klumpp, Jr., Asst. Atty. Gen., St. Paul, Gregory D. Larson, Hubbard County Atty., Park Rapids, for appellant.

C. Paul Jones, State Public Defender, Susan J. Andrews, Asst. Public Defender, St. Paul, for respondent.

Heard, considered and decided by NORTON, P.J., and LANSING and

IRVINE,* JJ.

## OPINION

L.J. IRVINE, Judge.

This is a pretrial appeal by the state from an order suppressing an inculpatory statement made by respondent Russ Ronnebaum and sought to be used by appellant in a prosecution for second-degree criminal sexual conduct, Minn.Stat. § 609.343, subd. 1(a) (1988). We affirm.

## FACTS

Ronnebaum's brother, Richard, and former sister-in-law, Patricia, contacted Hubbard County authorities sometime after January 30, 1988, claiming that respondent had sexually abused their daughter, D.M.R., who was then four years old. Richard informed authorities that on January 30, 1988, he and D.M.R. were visiting his father, when he discovered Ronnebaum and D.M.R. in a bedroom together, with Ronnebaum lying on top of the bed and D.M.R. under the covers. Ronnebaum was fully clothed, while D.M.R. had on only her underpants. Richard later questioned his daughter whether she had been touched, and she pointed to her pubic area. Richard related this incident to Patricia several days later.

Patricia told authorities that D.M.R. complained of soreness in her pubic area after the January 30 visitation and that D.M.R.'s vaginal area was red. Patricia also observed that D.M.R. became withdrawn and awoke frequently with nightmares. Sometime in February of 1988, D.M.R. told Patricia about the January 30 incident.

On February 25, 1988, Hubbard County Sheriff's Deputies Robert Henne and Cal Johannsen went to the home of respondent Ronnebaum's father to question Ronnebaum about the allegations of sexual abuse. Henne advised Ronnebaum of his *Miranda* rights. When Henne began talking to Ronnebaum about the incident, he denied any knowledge of it, accused the deputies of harassing him, and said the next time he spoke with police he wanted his attorney

present. The deputies ended the interview and left.

On March 16, 1988, investigator Jon Hermann of the Minnesota Attorney General's Office went to the same residence to interview Ronnebaum. Hermann, who had read the investigative file, knew Ronnebaum had told Deputy Henne he would not talk to police without an attorney. Hermann was also aware that Ronnebaum had a history of mental problems, having reviewed the court file dealing with his previous mental commitment before the interview. Ronnebaum had been committed in 1982 after being found mentally ill and dangerous.

Hermann did not give Ronnebaum a *Miranda* warning. Ronnebaum did not refuse to answer any questions and did not ask that an attorney be present. Ronnebaum admitted playing in the bedroom with D.M.R. on January 30, 1988, but said D.M.R. had been playing under the covers with her tape recorder and that she had the covers pulled up over her. Ronnebaum denied improperly touching D.M.R. on any occasion, but admitted he had lain on top of her and had masturbated in her presence.

D.M.R. was interviewed by a social worker and described, with anatomically correct dolls, the sexual contact "Russ" had with her. She had made complaints a year earlier to her mother and grandmother, identifying Ronnebaum.

D.M.R. was seen by Dr. Carolyn Levitt at Children's Hospital Clinic on April 25, 1988. Dr. Levitt found that D.M.R. had good verbal skills for a child of her age, but her memory, except for central events, was quite limited. D.M.R. was asked by Dr. Levitt what Uncle Russ did and she replied, "I don't know." Dr. Levitt asked D.M.R. to think about it and D.M.R. replied, "Hurted me." Dr. Levitt then asked D.M.R. how he hurt her and D.M.R. replied, "I don't know." Dr. Levitt asked D.M.R. where she was hurt and D.M.R. pointed to her vagina. D.M.R. further described, during the physical examination,

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. VI, § 2.

acts of penetration and sexual contact by Ronnebaum.

Ronnebaum told Hermann that after his grandmother had brought D.M.R. to confront him about the allegations, he called a psychologist to ask how much prison time he could receive for that type of activity, but the psychologist declined to give him a specific answer.

The state has moved to supplement the record on appeal with the report of a defense investigator's interview with D.M.R. In this statement, D.M.R. denied that Ronnebaum had improperly touched her or done other acts earlier described. She stated, however, that what she had told "other people" about the incidents was true, although she could not now remember the incidents.

### ISSUES

1. Should appellant's motion to supplement the record be granted?

2. Would suppression of respondent's statements have a critical impact on the outcome of the trial?

### ANALYSIS

#### I.

■ The state acknowledges that the defense investigator's report was not part of the record in the trial court and that its consideration on appeal would require suspension of the rules. *See* Minn.R.Civ. App.P. 110.05, 102; *see also Western World Insurance Co. v. Anothen, Inc.,* 391 N.W.2d 70, 73 (Minn.Ct.App.1986) (deposition taken after judgment would not be considered on appeal from judgment). The state contends the critical impact standard for a prosecution pretrial appeal makes it appropriate for this court to consider recent developments affecting the strength of the state's case. *See State v. Kim,* 398 N.W.2d 544, 550 n. 10 (Minn.1987) (facts indicating critical impact should be set forth in detail). The issue of critical impact is not presented to the trial court, and therefore presents an exception to the general rule that an appellate court will not consider issues raised for the first time on appeal. *See State v. Decker,* 371 N.W.2d 256, 257 (Minn.Ct.App.1985).

We need not decide this issue, because we conclude that even with the defense investigator's report, the critical impact standard has not been met. However, we note respondent's concern that supplementation of the record could rapidly become the rule in pretrial appeals, requiring an appellate court to keep up to date on the latest developments in the case. Because this court is not a fact-finding court and cannot assess witness credibility, and because the critical impact standard is necessarily predictive, that standard has not been, nor can it be, so precisely applied. In this case, we deny the state's motion.

#### II.

■ The critical impact standard is met where the state shows "the lack of the suppressed evidence significantly reduces the likelihood of a successful prosecution." *Kim,* 398 N.W.2d at 551.

There is ample evidence to corroborate the anticipated testimony of D.M.R. that Ronnebaum committed sexual contact with her. The medical evidence generally corroborates D.M.R.'s claim of abuse, as does her prompt and consistent reporting of the alleged incidents to her parents and grandmother. Both D.M.R.'s mother and grandmother could testify at trial that they had noticed her vaginal area was red and irritated around the time she was claiming abuse and also observed behavioral changes. D.M.R.'s father, Richard, could testify that he observed Ronnebaum lying on top of D.M.R. on January 30.

The statements D.M.R. made to Dr. Carolyn Levitt about the alleged abuse would likely be admissible as substantive evidence, as would the out-of-court statements to her parents and grandmother and to the social worker. *See* Minn.Stat. § 595.02, subd. 3 (1988).

The state asserts the suppression of respondent's confession will have a critical impact in this case similar to that in *State v. Hanson,* 355 N.W.2d 328 (Minn.Ct.App. 1984). In *Hanson,* this court found the

suppression of evidence of sexually explicit magazines obtained from a search, which was corroborative of a nine-year-old victim's statement that she had read a "naked book," would have a critical impact because the "materials she described may assist the jury in determining credibility." *Id.* at 329. However, in *Hanson* the only evidence was the testimony of the nine-year-old victim. Similarly, in *State v. Norberg*, 423 N.W.2d 733, 735 (Minn.Ct.App.1988), this court found critical impact where suppression of a confession left the state with the "very impeachable" testimony of a mentally ill and mentally retarded victim who "has a history of accusing others of similar acts."

There is evidence in this record of the reporting delays, memory loss, and recantations frequently noted in child sexual abuse cases. *See State v. Myers*, 359 N.W.2d 604, 610 (Minn.1984). However, the statements of D.M.R. are quite consistent and detailed. In addition to those out-of-court statements, there is highly corroborative medical evidence and, unusual in child abuse cases, direct testimony that Ronnebaum was seen in bed with D.M.R. on January 30, 1988. Much of the alleged reporting delay is due to the mother's disbelieving D.M.R.'s initial reports. We note that the denials and claimed memory loss in D.M.R.'s statement to the defense investigator do not appear significantly more impeaching than similar statements D.M.R. initially made to Dr. Levitt. We cannot assume from the recent statement either further recantations or a refusal to testify against Ronnebaum. Finally, we note that the excluded statement, although incriminating, is far from a full confession.

Because we find that critical impact has not been shown, we need not examine the trial court's ruling. *See e.g. State v. Recio–Arecibia*, 404 N.W.2d 853, 855 (Minn. Ct.App.1987).

## DECISION

The state's motion to supplement the record is denied. The state has not shown critical impact from the suppression order.

Affirmed.

LANSING, Judge, dissenting.

The threshold issue is whether the trial court's pretrial ruling has a sufficiently critical impact on the outcome of the trial to warrant appellate review. *State v. Kim*, 398 N.W.2d 544 (Minn.1987). In resolving this issue, the defense investigator's report should be considered even though the appellate rules do not provide a specific mechanism for receiving post-hearing information on purely appellate issues. *Cf.* Minn. R.Civ.App.P. 110.05. The nature of the proceeding and the relevancy of the material warrant an order permitting the state to supplement the record.

Even without the additional report, respondent's confession would have critical impact. The child was only three years old at the time of the offense alleged in Count I and four years old at the time of the offense charged in Count II. Her memory of events was already quite limited when she saw the examining physician. It is now two years since one of the incidents and it is likely that her memory has further deteriorated, which may undermine a determination of her competency. *See* Minn. Stat. § 595.02, subd. 1($l$) (1988). The child is the only witness, other than respondent, who can provide direct evidence that respondent committed the crimes.

The report confirms further erosion of the child's memory. In an interview on July 12, 1989 the child indicated to the defense investigator that the defendant had never touched her where she should not have been touched, had never hurt her, and had never made her touch his "potty" with her mouth. The victim stated respondent has never done anything "wrong" to her.

Inherent problems of child sexual abuse testimony have been considered sufficiently serious to warrant the admission of sexual abuse syndrome testimony. *State v. Myers*, 359 N.W.2d 604, 610 (Minn.1984); *State v. Saldana*, 324 N.W.2d 227, 231 (Minn.1982). These problems are not dispelled by the corroborative evidence cited by the majority, and are sufficient to lend critical impact to the suppression of confession.

Finally, I believe the trial court erred in suppressing the confession. Both interviews were clearly noncustodial, requiring no *Miranda* warning. *State v. Palm*, 299 N.W.2d 740, 741 (Minn.1980); *State v. Sickels*, 275 N.W.2d 809, 813 (Minn.1979). The issue of voluntariness of the confession was not raised in the trial court, but the apparent lack of coercive police activity defeats a claim on this basis. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).