STATE of Minnesota, Appellant,

v.

Russ Allen RONNEBAUM, Respondent.

No. CX–89–1068.

Supreme Court of Minnesota.

Jan. 5, 1990.

Paul R. Kempainen, William F. Klumpp, Jr., St. Paul, for appellant.

Susan Andrews, Asst. State Public Defender, St. Paul, for respondent.

KELLEY, Justice.

This is a pretrial state's appeal of the trial court's order suppressing evidence in the criminal prosecution of defendant for child sex abuse. The court of appeals, in a 2–1 decision, did not reach the merits of the suppression issue. It ruled that the state did not meet its burden under *State v. Webber*, 262 N.W.2d 157 (Minn.1977), of showing that the suppression of the evidence, if sustained, will have a "critical impact" on the outcome of the prosecution. *State v. Ronnebaum*, 446 N.W.2d 699, 701–02 (Minn.App.1989). The dissent argued that under our decision in *State v. Joon Kyu Kim*, 398 N.W.2d 544 (Minn. 1987), the suppression, if sustained, will have a critical impact; the dissent also argued that the suppression order was erroneous. 446 N.W.2d at 702–03. We agree with the dissent and, accordingly, reverse and remand for trial.

The child in this case, D.M.R., was born in June of 1983 and is now 6 years old. Defendant, who is 32, is her father's brother. Defendant stands charged with two separate acts of abuse, one occurring in early 1987, when D.M.R. was 3, the other on January 30, 1988, when D.M.R. was 4. The acts by defendant allegedly occurred

when D.M.R.'s father, who is divorced from her mother, took her to her grandfather's residence during weekend visitation.

It is alleged that on January 30, 1988, D.M.R.'s father walked into the bedroom and found defendant, fully clothed, lying on top of the covers with D.M.R. under the covers. The father pulled back the covers and found that D.M.R. was wearing only underwear. When he asked her if anyone hurt her or touched her where he should not touch her, she pointed to her pubic area. The father told his ex-wife about this a few days later. She had noticed redness around D.M.R.'s vagina and she recalled that D.M.R. had complained of soreness in the pubic area after the visit.

On February 12, 1988, D.M.R. allegedly told a social worker that "Russ" touched her in the vaginal area, which she referred to by a different name. With anatomically correct dolls, she demonstrated what happened by placing the adult male doll on top of the girl doll with the male doll's penis between the girl doll's legs. She said that a substance had come out of defendant's penis.

D.M.R.'s great-grandmother, hearing of all this, recalled that in early 1987 D.M.R. told her that "Russ" had put his finger inside her and "peed on me."

On February 25, 1988, two sheriff's deputies went to defendant's father's house and, after giving defendant a *Miranda* warning, talked with him. Defendant denied abusing D.M.R. and, as the deputies were leaving, said that the next time he spoke with them he wanted his attorney present.

On March 16, 1988, an investigator with the Attorney General's Office went to the same place and, after being invited in by defendant's father, talked with defendant without giving him a *Miranda* warning. Defendant said that nothing had happened when his brother, D.M.R.'s father, walked in on them. He said he was just playing with D.M.R. He said that D.M.R. had seen him naked on occasion, when she walked in on him in the bathroom. He denied ever touching her on the breasts or in the vaginal area with his hands. He allegedly ad-mitted that a year earlier, while both he and D.M.R. were clothed, he laid on top of her, rubbing his penis on her vaginal area, and fantasized about having intercourse or an orgasm with her. He said on one occasion when he got off her he felt a wetness inside his pants. He asked how much prison time he would receive for masturbating around a young child.

Subsequently, Dr. Carolyn Levitt met with D.M.R. Her testimony, if admitted, will be damaging to defendant.

The trial court based its suppression order on the fact that the investigation had focused on defendant, on the fact that the investigator knew that defendant earlier had said he would not talk to anyone without his attorney present, and on the investigator's failure to give defendant a *Miranda* warning.

While the appeal was pending, the defense notified the state that a defense investigator had talked with D.M.R. and her mother and that D.M.R. said defendant had never touched her or done anything wrong to her. She also reportedly said, inconsistently, that what she had told others was true, but she said she could not remember defendant doing anything wrong. D.M.R.'s mother reportedly is supportive of defendant and said she wished the entire incident would be resolved. The state moved the court of appeals for permission to supplement the record on appeal with this information because it bears on the critical impact issue. The court of appeals denied the motion, but stated its opinion that even with the defense investigator's report the state had not shown critical impact. 446 N.W.2d at 701. The dissent argued that the motion should be granted. 446 N.W.2d at 702.

1. Because of a series of decisions by the Minnesota Court of Appeals relying on the "critical impact rule" in such a way as to allow a state's pretrial appeal of a suppression order only when the suppression order effectively destroyed the possibility of a successful prosecution, we granted review in two cases in late 1985 and early 1986. Our decisions in those cases are: *State v. Joon Kyu Kim*, 398 N.W.2d 544

(Minn.1987), and *State v. Anderson*, 396 N.W.2d 564 (Minn.1986). *Joon Kyu Kim* made clear this court's view that the court of appeals was being too strict in applying the critical impact rule. The gist of this court's holding in *Joon Kyu Kim* was that critical impact is shown "not only in those cases where the lack of the suppressed evidence completely destroys the state's case, but also in those cases where the lack of the suppressed evidence significantly reduces the likelihood of a successful prosecution." *Joon Kyu Kim*, 398 N.W.2d at 551.

■ The court of appeals here concluded that suppression of the confession will not significantly reduce the likelihood of the state succeeding in this child sex abuse prosecution. We disagree with this conclusion. Indeed, it seems to us that when a trial court suppresses a confession in a case of this sort, the suppression normally will significantly reduce the likelihood of a successful prosecution. *Cf. State v. Anderson*, 396 N.W.2d 564 (Minn.1986) (court of appeals' ruling that the suppression of a confession in a sex prosecution did not have a critical impact reversed). Even if the state's case is as strong as the court of appeals says it is, that does not mean that the suppression of the confession will not significantly reduce the likelihood of a successful prosecution. As we do not need the information in the defense investigator's report to reach this conclusion, we do not address or decide the issue whether the court of appeals erred in denying the state's motion to supplement the record on appeal.

2. Because of its decision of the critical impact issue, the court of appeals did not reach the suppression issue on its merits. The dissent, however, did reach the issue. We agree with the dissent's conclusion that the trial court erred in suppressing the evidence.

■ The sixth amendment right to counsel attaches once the prosecution of the defendant is formally commenced, usually by the filing of the complaint. *United States v. Gouveia*, 467 U.S. 180, 187, 104 S.Ct. 2292, 2296, 81 L.Ed.2d 146 (1984). What some refer to as the fifth amendment right to counsel is a court-created right to counsel as part of the *Miranda* safeguards in connection with custodial interrogation. *Id.* at 188 n. 5; *Michigan v. Tucker*, 417 U.S. 433, 444, 94 S.Ct. 2357, 2363, 41 L.Ed.2d 182 (1974). That right to counsel attaches only when a suspect invokes the right during custodial interrogation. Thus, a suspect has no right to counsel, even if he asks for it, if no charge has been filed against him and if he is not "in custody." *State v. Murphy*, 380 N.W.2d 766, 769–70 n. 2 (Minn.1986) (addressed the issue under both federal and state constitutions).

■ In this case the defendant was questioned twice, both times before the formal charges were filed. He was not in custody on either occasion and was not entitled either to the presence of counsel or to receive a *Miranda* warning. The test of custody is an objective test, whether a reasonable person in the defendant's position would have understood that he was in custody. *Berkemer v. McCarthy*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984); *State v. Herem*, 384 N.W.2d 880, 883–84 (Minn.1986). The fact that defendant was the focus of the investigation does not, as the trial court appears to have assumed, entitle defendant to receive a *Miranda* warning. *State v. Herem*, 384 N.W.2d at 883–84 (citing *Minnesota v. Murphy*, 465 U.S. 420, 431, 104 S.Ct. 1136, 1144, 79 L.Ed.2d 409 (1984)). Because we cannot conclude that a reasonable person in the defendant's position would have understood that he was in custody, we agree with the dissent's conclusion that the suppression order was erroneous and should be reversed.

Reversed and remanded for trial.