**UNITED STATES of America, Plaintiff,**

v.

**Robert L. WHITE, Defendant.**

**No. 81 CR 673.**

United States District Court,
N.D. Illinois, E.D.

Oct. 14, 1982.

---

See also, 541 F.Supp. 1181.

———

Dan K. Webb, U.S. Atty., Daniel M. Purdom, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Bradford P. Lyerla, Carol R. Thigpen, Jenner & Block, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court's June 9, 1982 memorandum opinion and order (the "Order," 541 F.Supp. 1181) granted the motion of defendant Robert White ("White") to suppress records seized from his office by federal postal inspectors. After the government had appealed the Order, the Court conducted at the joint request of the parties a further evidentiary hearing (on a limited agreed-upon remand from the Court of Appeals) to resolve one issue as to the nature of evidence covered by the Order. That hearing involved the government's introduction of a brief stipulation and the testimony of Assistant United States Attorney Victoria Meyers ("Meyers").

*Facts*

Evidence relating to three sets of entities and individuals [1] is covered in the stipulation:

1. Evidence as to 18 "Group 1 Persons" had been obtained before execution of the disputed search warrant April 15, 1981.[2]

2. Existence and identity of the five "Group 2 Persons" were known to the government before the search. However none of those persons was communicated with, nor was evidence obtained from any, until after execution of the search.

3. Six "Group 3 Persons" were wholly unknown to the government before the search. Documents seized during the search were the source through which the government learned of those persons.

Other relevant stipulated facts as to the Group 2 and Group 3 Persons are reflected at appropriate places in this opinion.

According to Meyers' testimony subpoenas had been issued before the search covering Illinois Bell Telephone's toll calls and "mud" (multiple unit dialing) sheets relating to local calls from White's telephones. That information was sought for three purposes:

1. to identify further "victims" (parties solicited for goods as part of White's allegedly fraudulent scheme);

2. to obtain leads of any kind as to persons to whom materials had been sold as part of the alleged scheme; and

3. to determine the possibility of wire fraud under 18 U.S.C. § 1343.

Meyers also testified she would herself have called, or would have instructed Postal Inspector Jan Cooper ("Cooper") to call, all out-of-state numbers on the Illinois Bell toll call list (all the Group 3 Persons were out-of-state business concerns). That testimony is not credited by this Court because:

---

1. For convenience the collective term "person" is used in this opinion in the generic sense employed in many statutes and regulations (the securities laws are one example).

2. This date is given as 1982 in Stip. ¶ 1. As the Order reflects (541 F.Supp. at 1182–83) and as Stip. ¶ 2 also indicates, 1981 has to be correct.

1. Neither by the date of the indictment (in November 1981) nor by the date of the post-Opinion hearing (in July 1982) had Meyers instructed Cooper to call *any* of the Group 3 Persons.

2. Even through the date of the post-Opinion hearing the government had no idea of the identity of the telephone subscribers as to *any* of the telephone numbers shown on the toll call list, *except* for the Group 3 Persons and a few of the Group 1 Persons.

There was of course no need, after the search, to use the toll call list to learn the identity of the Group 3 Persons. But the government also made no use of the list to obtain any information about *other* persons. It is plain that those Illinois Bell materials, though available to the government, played no role in fact in the investigative process. This Court would have to draw an inference from an inference to make the Meyers testimony consistent with such total non-use of the toll call list. Both such inferences are unduly attenuated, and this Court is not prepared to accept the government's invitation.

### Fruit of the Poisonous Tree

Both sides agree that the operative standard for determining exceptions to the exclusionary principle of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) is that stated in *United States ex rel. Owens v. Twomey,* 508 F.2d 858, 865 (7th Cir. 1974):

> In short, as the state succinctly puts it, there have evolved three tests from *Wong Sun,* any one of which, when applicable, establishes that the controverted evidence is not fruit of the poisonous tree when: (1) the evidence was discovered by an independent source; (2) the evidence is sufficiently distant in causal connection from the illegal search and seizure so that the connection has become so attenuated as to dissipate the taint; or (3) the evidence inevitably would have been gained even without the unlawful search.

They also agree that evidence as to the Group 1 Persons was "discovered by an independent source" within *Owens* and is therefore not suppressible. Their disagreement relates to the Group 2 and Group 3 Persons.

*Identity* of the Group 2 Persons was known to the government before the tainted search, but that is not determinative under *Owens.* As to the *evidence* relating to those persons (the critical matter), Cooper's testimony would have been "that nothing obtained in the execution of the search warrant caused him to contact these entities and individuals, and that they would have been contacted in the normal course of the investigation" (Stip. ¶ 2). White asks this Court to reject that statement as unworthy of belief, but a difference of kind and not degree exists between the search-evidence relationship in the Group 2 and the Group 3 situations. There is nothing inherently implausible in Cooper's statement, and the government was not required to defer its attempted search of White's premises until it had exhausted its other sources of inquiry. Accordingly the Court holds that evidence as to the Group 2 Persons is also not suppressible.

As for the Group 3 Persons, however, the government must rely on the third branch of *Owens:* "the evidence inevitably would have been gained even without the unlawful search." On that score the government's concept of inevitability does violence both to the meaning of that word and to the purpose of the *Wong Sun* rule. Given the disinterest in the telephone records the government displayed *in fact,* its current explanation is found to be a post hoc rationalization and is rejected as a matter of fact.

Under related circumstances (though dealing with the admissibility of witness testimony rather than other evidence), the Court of Appeals for the Fifth Circuit defined the government's burden on the "inevitable discovery" issue in these terms, *United States v. Brookins,* 614 F.2d 1037, 1048 (5th Cir.1980): [3]

**3.** *Brookins,* 614 F.2d at 1044, cited *Owens* for    the general doctrine of inevitable discovery.

This approach does not mean that any illegally obtained evidence can be admitted simply because law enforcement officials assert that it would have been inevitably discovered. The mere assertion of inevitable discovery must fail. After the accused has challenged the legality of the witness' acquisition and of the use of the witness' testimony, the police must show that when the illegality occurred they possessed and were actively pursuing the evidence or leads that would have led to the discovery of the challenged witness and that there was a reasonable probability that that witness would have thereby been discovered. The prosecution must bear the burden of proof on this issue. Maguire, *supra* at 315; *see Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The court then must find that reasonable probability of subsequent discovery existed based on this showing and the record generally. Our holding, therefore, is that, despite a prior illegality which led to the discovery of a witness, that witness' voluntary testimony is admissible if the prosecution proves that the witness and his testimony would have been discovered in a lawful manner, had the prior illegality not occurred, by virtue of ordinary investigations of evidence or leads already in their possession.

*Accord* on the burden of proof issue, *United States v. Dansberry,* No. 80 CR 281 (N.D.Ill. Mar. 20, 1981) (an opinion that also supports rejection of the government's position on the substantive issue posed here).

Under the circumstances the government has not credibly demonstrated a "reasonable probability" of discovery of the Group 3 Persons evidence but for the illegal search (let alone meeting any more stringent definition of inevitability). For that reason, and based on this Court's finding of fact that the evidence as to the Group 3 Persons would *not* in fact have been obtained but for the unlawful search, the Court holds that such evidence must be suppressed under the Order.