849 F.2d 293
 25 Fed. R. Evid. Serv. 1243
 UNITED STATES of America, Appellee,
v.
Julia Lynn FELDHACKER, Appellant.
UNITED STATES of America, Appellee,
v.
Mark David CRITZ, Appellant.
UNITED STATES of America, Appellant,
v.
Julia Lynn FELDHACKER, Appellee.
UNITED STATES of America, Appellant,
v.
Mark David CRITZ, Appellee.
 Nos. 87-1459, 87-1469, 87-1570 and 87-1571.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 18, 1987.
Decided May 31, 1988.
Rehearing and Rehearing En Banc Denied in Nos. 87-1459,
87-1570 July 28, 1988.
Rehearing Denied in Nos. 87-1469, 87-1571 Aug. 1, 1988.
 
 Joseph G. Bertogli, Des Moines, Iowa, for appellant Feldhacker.
 Timothy McCarthy, Des Moines, Iowa, for appellant Critz.
 Robert Dofp, Asst. U.S. Atty., Des Moines, Iowa, for appellee.
 Before ARNOLD and FAGG, Circuit Judges, and LARSON,* Senior District Judge.
 ARNOLD, Circuit Judge.
 
 
 1
 Julia Lynn Feldhacker and Mark David Critz separately appeal from convictions stemming from the prosecution of a cocaine distribution scheme. In a consolidated trial, the jury convicted defendant Feldhacker on four counts of perjury before a grand jury under 18 U.S.C. Sec. 1623 and two counts of obstruction of justice under 18 U.S.C. Sec. 1503.[1] Defendant Critz was convicted by the same jury of three counts of distributing cocaine to individuals, one of whom was under the age of twenty-one, in violation of 21 U.S.C. Secs. 841(a)(1) and 845(a), as well as four counts of obstruction of justice under 18 U.S.C. Sec. 1503. The government cross-appeals from the District Court's decision not to enhance the sentences of both defendants under 18 U.S.C. Sec. 3147. We affirm the convictions of both Feldhacker and Critz, but we reverse the District Court's refusal to enhance their sentences.
 
 I.
 
 2
 Initially, both Feldhacker and Critz argue that the District Court should have granted their motions to dismiss the pending charges on the ground that the government had illegally initiated grand jury proceedings after it had dismissed a previous case against Critz. This argument has two aspects. Appellants suggest that the initial dismissal of charges against Critz with leave to refile violated the spirit of Fed.R.Crim.P. 48(a), the object of which is "... to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging ..." Rinaldi v. United States, 434 U.S. 22, 29 n. 15, 98 S.Ct. 81, 85 n. 15, 54 L.Ed.2d 207 (1977). In this case, however, the record does not yield a reasonable inference of prosecutorial harassment. The government dismissed its original case against Critz only after the trial court granted Critz's motion to suppress statements he made to investigators, with the result that the government's case on the original indictment became severely weakened.
 
 
 3
 At this point, appellants argue that the government's subsequent reindictment of Critz indirectly violated the rule that grand jury proceedings may not be used to develop the prosecution's case once an indictment has issued. In effect, appellants are claiming that Critz's previous indictment prevents any further grand jury investigation, despite the fact that this indictment had been dismissed. We reject this application of the rule. In general, absent prosecutorial abuse, a defendant does not obtain immunity from prosecution simply because the prosecution has previously dismissed an indictment which described the criminal acts at issue. See DeMarrias v. United States, 487 F.2d 19, 21 (8th Cir.1973), cert. denied, 415 U.S. 980, 94 S.Ct. 1570, 39 L.Ed.2d 877 (1974). In this particular instance, the suppression of Critz's confession clearly constitutes a change in circumstances which justifies reindictment after a dismissal under Rule 48(a). See United States v. Mendenhall, 597 F.2d 639, 641 (8th Cir.), cert. denied, 444 U.S. 855, 100 S.Ct. 113, 62 L.Ed.2d 73 (1979). It is not argued that the government knew when Critz was initially indicted that the statement would be suppressed. Nor has Critz shown that the grand jury obtained any evidence against him while the original indictment, later dismissed, was still pending.
 
 II.
 
 4
 Appellants next argue that the District Court erroneously failed to suppress the testimony of five prosecution witnesses whose identities were initially divulged to investigators through statements of the defendants which the court later held were illegally obtained.[2] Feldhacker and Critz both claim that these witnesses' testimony was accordingly the fruit of the poisonous tree.
 
 
 5
 The government's response is that the identities of these purchaser-witnesses would inevitably have been discovered absent the illegally obtained admissions of the defendants. In particular, the government relies on two legally obtained address books, which contain the names of and identifying information on each of the five witnesses. Feldhacker and Critz both argue vigorously that the investigating agents could not have picked the five witnesses out of the numerous other names and numbers in the books without the prior tainted knowledge derived from defendants' earlier statements.[3] They further allege that the address book entries are often fragmentary and vague. According to appellants, knowledge of the suppressed confessions enabled investigators to "zero in" on the names in the address book they already knew would produce the incriminating evidence.
 
 
 6
 The difficulty with appellants' approach to the inevitable-discovery rule is that it mistakenly focuses on what investigators actually did after the unlawful discovery, rather than what they would have done in the absence of such an illegal disclosure. This inquiry necessarily entails reasoning about hypothetical circumstances contrary to fact. In Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the Supreme Court held that since a murder victim's body would have been discovered within a short time by a search party, the fact that the suspect first led police to the body under unlawful interrogation did not justify suppression of the evidence. In this context, the police in Williams were allowed to do even more than "zero in" on the illegally discovered gravesite. The police were allowed to retain their knowledge of the body's location, since it would have been absurd to order that the victim's body be reburied to test whether the search party would actually have discovered it.
 
 
 7
 Instead, the question here, as in Williams, is whether "... the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ..." 467 U.S. at 444, 104 S.Ct. at 2509. Even if their prior knowledge of witness Bob Bruns's identity enabled investigators to decipher the "B.B." entries in the address books more quickly, the prosecution can still avoid suppression of Bruns's testimony if it can show that investigators operating without this prior knowledge would have ultimately uncovered Bruns anyway.[4] This was a question of fact which the District Court resolved in favor of the prosecution. On the record before us, we cannot say that the District Court's factual finding was clearly erroneous.
 
 III.
 
 8
 Next, appellants both argue that the District Court committed reversible error by admitting as physical evidence six ounces of cocaine and some drug paraphernalia which agents seized during a search of Critz and Feldhacker's residence. The crux of appellants' objection is that neither was charged with selling the six-ounce supply. Accordingly, defendants argue that its introduction as evidence served only to prejudice the jury without helping the jury determine the truth of the distribution charges.
 
 
 9
 We disagree. Even though defendants were not charged with selling the entire six-ounce supply, the presence of the cocaine corroborates the testimony of witnesses that the defendants did in fact sell them cocaine. The probative value of this physical evidence probably outweighs its prejudicial effect, and so we cannot say that the trial court abused its discretion in admitting it.
 
 IV.
 
 10
 Next, appellant Critz argues that the District Court erred in admitting duplicate copies of checks written by witness Bruns to Critz. Under the best evidence rule, copies of documents are admissible when, as witness Bruns testified, the originals are not available. See Fed.R.Evid. 1003. While Critz raises the objection that the photostatic copies of Bruns's checks are almost illegible, the District Court thought they were legible enough, and we have no basis to hold that it acted outside its discretion in admitting these copies.
 
 V.
 
 11
 On appeal, both appellants renew their objection to the trial court's instruction to the jury which defined the kind of acts which violate 18 U.S.C. Sec. 1503. In particular, the District Court's instruction explained that "voluntarily ... encouraging a prospective witness to evade service of a subpoena ..." and "encouraging ... a prospective witness to knowingly give false testimony" both constitute acts which influence, obstruct, or impede justice. Appellants argue that the trial judge improperly influenced the jury by tailoring the instructions to the exact acts which the indictment alleged.
 
 
 12
 We note that neither appellant urges that the instruction erroneously stated the law. In other words, there is no question that the conduct described in the indictment and in the jury instruction does in fact fall within the prohibition of 18 U.S.C. Sec. 1503. Once instructed, it remained for the jury to determine whether the defendants had in fact engaged in the conduct described in the indictment. We find no error or prejudicial effect in the District Court's jury instruction. In fact, we prefer instructions phrased not in abstract legalisms, but rather in concrete terms that intelligibly describe the actual evidence or contentions of the parties.
 
 VI.
 
 13
 Feldhacker further appeals from the trial court's submission of four separate perjury counts to the jury, arguing that these multiple counts unfairly compound a single act of perjury by treating false responses to similar but separate questions as separate grounds for indictment. Here, Feldhacker was separately charged with falsely denying that Critz sold cocaine to Bob Bruns (Count II), that Critz sold cocaine to Tom Heirigs (Count III), that she received money from Heirigs as payment for cocaine (Count IV), and that she sold cocaine to Donald Grothe (Count V).
 
 
 14
 It is clear that the prosecution may not multiply charges of perjury by repeatedly rephrasing the same question, see United States v. Williams, 552 F.2d 226 (8th Cir.1977). However, it is equally clear that separate false statements may be charged in separate perjury counts if they require different factual proofs of their falsehood, notwithstanding their relationship to a common nexus of fact. See United States v. Scott, 682 F.2d 695, 698 (8th Cir.1982). In this case, it is true that Feldhacker's blanket denial of any knowledge or involvement in cocaine trafficking[5] appears to cover both of her specific restatements of this denial with respect to Bruns and Heirigs. However, the prosecution's specific questions relating to Bruns and Heirigs were separate and distinct inquiries, and the witness was bound to answer them truthfully. To grant Feldhacker's Motion to Elect between perjury counts would, in effect, reward her for the breadth of her original false denial. We find no error in the trial court's submission of all four counts of perjury to the jury. The dismissal of Count I cured whatever multiplicity problem existed. Counts II through V were all separate and distinct from each other.
 
 VII.
 
 15
 Next, Feldhacker argues that the District Court erred in refusing to dismiss that count of the indictment (Count V) charging that she lied about selling cocaine to Donald Grothe. Feldhacker claims that, since the grand jury was investigating Mark Critz's involvement in cocaine trafficking, Feldhacker's false statements about her own cocaine sales were not material to the grand jury's investigation. Feldhacker concludes that misleading the grand jury about an issue outside the scope of its investigation does not violate 18 U.S.C. Sec. 1623.
 
 
 16
 On these facts, it seems obvious that Feldhacker's sales of cocaine, if truthfully disclosed to the grand jury, would have raised questions about the extent of the role of Critz--who lived with Feldhacker--in supplying or arranging the sale. As in United States v. Ashby, 748 F.2d 467, 471 (8th Cir.1984), "the grand jury was investigating a [federal offense] and ... knowledge of other possible participants [was a] relevant avenue[ ] of inquiry and not tangential to the investigation." Accordingly, we affirm the District Court's refusal to dismiss Count V against Feldhacker.
 
 VIII.
 
 17
 Finally, we turn to the government's cross-appeal from the sentencing court's refusal to enhance Critz and Feldhacker's sentences under 18 U.S.C. Sec. 3147. The prosecution alleges that Feldhacker and Critz each committed some or all of their violations of the obstruction-of-justice and perjury statutes while on bond. The District Court declined, on the ground that Sec. 3147 creates a separate crime, for which defendants should have been separately indicted. The District Court noted the similarity between the provisions of Sec. 3147 and 18 U.S.C.App. Sec. 1202(a), and relied on the Fifth Circuit's decision in United States v. Davis, 801 F.2d 754 (5th Cir.1986), for the proposition that Sec. 3147, like Sec. 1202(a), creates a separate crime.
 
 
 18
 We begin, as we must, with the words of the statute:
 
 
 19
 Sec. 3147. Penalty for an offense committed while on release
 
 
 20
 A person convicted of an offense committed while released under this chapter shall be sentenced, in addition to the sentence prescribed for the offense to--
 
 
 21
 (1) a term of imprisonment of not more than ten years if the offense is a felony; or
 
 
 22
 (2) a term of imprisonment of not more than one year if the offense is a misdemeanor.
 
 
 23
 A term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment.
 
 
 24
 There is a similarity between Sec. 3147 and Sec. 1202(a), and, at the time of the District Court's action in this case, this Court had not yet made an authoritative statement on the question whether Sec. 1202(a) created a separate offense or merely enhanced a sentence imposed for an underlying offense. Since the time of the District Court's opinion, however, this Court sitting en banc has rejected the Fifth Circuit's position in Davis, holding that 18 U.S.C.App. Sec. 1202(a) creates a sentence enhancement for which defendants need not be separately charged. United States v. Rush, 840 F.2d 574 (8th Cir.1988) (en banc). For many of the same reasons developed in Rush, we now hold that 18 U.S.C. Sec. 3147 also provides for an enhancement of sentence, rather than creating a separate offense that must be separately charged by the grand jury and found by the jury beyond a reasonable doubt.
 
 
 25
 This conclusion is fortified by our understanding of the plain words of Sec. 3147, which, if anything, is more clear on this subject than Sec. 1202(a). The heading of the statute refers to "Penalty," and the statute is phrased in terms of an addition to the sentence imposed on someone who has already been convicted of another offense. In addition, we note that all of the appellate authority on the subject is in accord with our conclusion. United States v. Patterson, 820 F.2d 1524, 1526 (9th Cir.1987); United States v. Rodriguez, 794 F.2d 24 (2d Cir.1986) (dictum), rev'd on other grounds, --- U.S. ----, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987).
 
 
 26
 Appellants also object that they received no written notice of the government's intent to seek an enhanced sentence under Sec. 3147. They point out that other sentence-enhancement statutes contained detailed notice requirements. The short answer is simply that Sec. 3147 does not contain such a requirement. It is a self-executing and mandatory provision of law, addressed by Congress to sentencing courts. This is the kind of direction that Congress unquestionably has the right to give, subject only to constitutional limitations, which no one claims have been exceeded here. In addition, it is conceded that the government told defendants during pre-trial negotiations that it intended to rely, in the event of a conviction, on the sentence-enhancement provisions of Sec. 3147. Defendants do not claim that this notice was inadequate in the sense that it left them with insufficient time to prepare a defense to the government's assertion that Sec. 3147 would apply in the event of a conviction. The fact that the notice was oral instead of written is immaterial. It is the fact and timing of notice, not its form, that matters for due-process purposes.
 
 
 27
 Accordingly, defendants' convictions will both be affirmed, but the sentences will be reversed on the government's cross-appeal, and both cases remanded for resentencing. The District Court should hold an evidentiary hearing prior to resentencing, at which the government will be allowed to introduce evidence that defendants were on bond when the offenses were committed, following which defendants, if they wish, will be allowed to present evidence to the contrary. The fact of conviction, of course, has already been established. It is only the question of whether defendants were on bond when the offenses were committed that will need to be determined by the District Court. If the court determines this question in the affirmative, it will then proceed to apply Sec. 3147.
 
 
 28
 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
 
 
 
 *
 The Hon. Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 Feldhacker had previously been convicted of distributing cocaine in violation of 21 U.S.C. Sec. 841(a)(1), a conviction we affirmed in United States v. Feldhacker, 820 F.2d 279 (8th Cir.1987)
 
 
 [2]
 These witnesses--Thomas Heirigs, Marc Weller, Robert Bruns, Donald Grothe, and Dave Christensen--each testified to having purchased cocaine from both defendants. In addition to incriminating Critz on the cocaine trafficking charges, this testimony tended to incriminate Feldhacker on the perjury charges, since she had specifically denied Critz's involvement in cocaine traffic with several of these witnesses before the grand jury. Furthermore, witnesses Grothe and Bruns testified that defendants had attempted to influence them to commit perjury before the grand jury
 
 
 [3]
 For example, defendants claim that the books contain several entries for persons with the initials "B.B", but agents interviewed only Bob Bruns because his name was already known to investigators
 
 
 [4]
 There are reasonable limits to the scope that courts will impute to the hypothetical untainted investigation. An investigation conducted over an infinite time with infinite thoroughness will, of course, "ultimately or inevitably" turn up any and all pieces of evidence in the world. Prosecutors may not justify unlawful extractions of information post hoc where lawful methods present only a theoretical possibility of discovery. While the hypothetical discovery by lawful means need not be reached as rapidly as that actually reached by unlawful means, the lawful discovery must be inevitable through means that would actually have been employed. Cf. Williams, supra, 467 U.S. at 448-50, 104 S.Ct. at 2511-12 (court relied on evidence that the search party was less than five hours from discovering the victim's body)
 
 
 [5]
 This false denial formed the basis of Count I against Feldhacker, which the prosecution subsequently elected to dismiss