STATE of Minnesota, Appellant,

v.

John William DOUGHTY, Respondent.

No. C7–89–1934.

Court of Appeals of Minnesota.

May 22, 1990.

Review Granted July 31, 1990.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., Mark Nathan Lystig, Asst. County Atty., St. Paul, appellant.

William E. Falvey, Ramsey County Public Defender, Richard J. Coleman, Asst. Public Defender, St. Paul, respondent.

Considered and decided by RANDALL, P.J., and SHORT and GARDEBRING, JJ.

## OPINION

GARDEBRING, Judge.

This appeal is from a pre-trial order finding a confession was obtained in violation of *State v. Robinson*, 427 N.W.2d 217 (Minn.1988), and suppressing all evidence derived from the confession. We affirm.

## FACTS

Respondent John Doughty was arrested by St. Louis Park police on November 14, 1988, based on probable cause that he had committed a kidnapping and assault that began in St. Louis Park. Doughty was given a *Miranda* warning, and transported to the St. Louis Park police department. There, he was questioned about the St. Louis Park offense.

The interviewing officer testified Doughty at first denied the assault, then said, "I did it for Satan," explaining he needed to make a sacrifice for Satan. Doughty then turned away and asked the officer, "Shouldn't I have an attorney so you don't ask me any illegal questions?" The officer made no response. However, the officer testified:

A And as I continued not to say anything, then he looked over at me and said, "What do you think?" And I responded—Do you want my response?

Q Yes. What was your response?

A And I responded—it was not in answer to his question more or less. I responded, "I'm very interested in hearing your side of the story."

Doughty did not more explicitly request an attorney, and went on to discuss the details of the St. Louis Park offense.

After an informal statement, relating only to the St. Louis Park kidnapping and assault, and a second *Miranda* warning, Doughty gave a formal taped statement, during which he revealed he had committed another offense in St. Paul. Doughty described the offense and said it occurred in late October 1988. Following the formal statement, St. Paul police were notified. They called back a half-hour later and stated they had no information on such an offense.

In the trial on the St. Paul offense, the state introduced as an omnibus hearing exhibit a "supplementary report" of that offense dated October 17, 1988 (the date of the offense). According to this report, the victim's father had reported the incident, the same day, to an assistant county attorney, "in hope of connecting this suspect to other offenses." The family, however, did not want to formally report the offense. The officer who received the "tip," Sergeant DeNoma, using information provided by the victim's father, obtained Doughty's name and address from the victim's employer as one of two possible suspects.

Sergeant DeNoma did not testify at the omnibus hearing. Another St. Paul investigator, Sergeant Pye, testified that, at the request of the St. Louis Park police, he checked twice on November 16 (two days after Doughty's confession) and there was no report of the incident on file.

Doughty's arrest for the "Satanist" kidnapping and assault generated considerable publicity. In response to the publicity, Oliver Weir, the former employer of both Doughty and the St. Paul victim, called St. Paul police on November 17, 1988. Sergeant Pye, who was in charge of the investigation prompted by Doughty's confession, returned this call. Weir told him Doughty had been terminated because he had made harassing phone calls to two waitresses, whose names he gave Pye. One of the waitresses was the St. Paul victim, S.C. On the same day as Weir's call, Pye discovered the report prepared by Sergeant DeNoma.

Meanwhile, Doughty had led St. Louis Park police to the site of the St. Paul offense. St. Paul police were again contacted. As a result, Sergeant Pye interviewed S.C.'s mother, and later the victim herself.

Doughty was charged in Ramsey County with two counts of burglary in the first degree, and one count of assault in the second degree. The trial court ruled that St. Louis Park police had violated Doughty's fifth and sixth amendment rights on November 14 by not clarifying his equivocal reference to counsel. The court also determined that this violation required the suppression of all evidence derived from it, and that the state failed to show the evidence of the assault would have been "inevitably discovered."

## ISSUES

1. Did the trial court clearly err in ruling the interrogation of respondent violated *State v. Robinson?*

2. Did the court clearly err in applying the derivative evidence rule to a *Robinson* violation?

3. Did the court clearly err in finding evidence of the St. Paul assault would not have been inevitably discovered without the violation?

### ANALYSIS

### I.

■ The trial court held Doughty's question to the St. Louis Park officer, "Shouldn't I have an attorney so you don't ask me any illegal questions?", could be construed as a request for counsel, meaning, under *State v. Robinson*, 427 N.W.2d 217, 223 (Minn.1988),

> all further questioning must stop except that narrow questions designed to 'clarify' the accused's true desires respecting counsel may continue.

Because the St. Louis Park officer did not attempt to clarify this question, but instead encouraged Doughty to continue talking about the assault, the trial court held *Robinson* was violated. Such a pre-trial ruling is reversed only when the state clearly and unequivocally demonstrates it to be erroneous. *State v. Joon Kyu Kim*, 398 N.W.2d 544, 547 (Minn.1987).

The supreme court in *State v. Robinson*, 427 N.W.2d at 223, held "an equivocal or ambiguous statement" concerning counsel triggers the rule announced in that case. The phrasing of Doughty's comment in the form of a question does not sufficiently distinguish this case. The trial court did not clearly err in finding a *Robinson* violation. We note, however, that the trial court did err in indicating there was a sixth amendment violation. *See State v. Ronnebaum*, 449 N.W.2d 722, 724 (Minn.1990) (sixth amendment right to counsel attaches when the prosecution formally commences, as by filing of the complaint).

### II.

■ The state contends the trial court clearly erred in applying the "fruit of the poisonous tree" doctrine, also known as the derivative evidence rule, to a *Robinson* vio-lation. The state argues that the derivative evidence rule does not apply to *Miranda* violations, or to any fifth amendment violation.

The state's argument that the derivative evidence rule does not apply to *any* fifth amendment violation has no merit. The derivative evidence rule has frequently been applied to non-*Miranda* fifth amendment violations. *See, e.g., United States v. Martinez–Gallegos*, 807 F.2d 868, 870 (9th Cir.1987); *see also United States v. Bengivenga*, 845 F.2d 593, 601 (5th Cir.) (derivative evidence rule applies only to "actual constitutional violation" in a fifth amendment case), *cert. denied*, 488 U.S. 924, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988). Our supreme court has applied the derivative evidence rule to a violation of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which is a fifth amendment violation. *State v. Warndahl*, 436 N.W.2d 770, 775–76 (Minn.1989).

The state relies upon *Michigan v. Tucker*, 417 U.S. 433, 445, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974), and *Oregon v. Elstad*, 470 U.S. 298, 309, 105 S.Ct. 1285, 1293, 84 L.Ed.2d 222 (1985), in which the Supreme Court held it would not apply the derivative evidence rule to exclude the fruits of a *Miranda* violation where the statement elicited from the accused was knowingly and voluntarily made. In neither of these cases, however, was the fifth amendment violation related to a request for counsel; instead in both cases, the statements sought to be suppressed occurred after violation of the procedural requirements of *Miranda*. Therefore, in order for its argument to succeed, the state must equate a *Robinson* violation with a *Miranda* violation. However, we cannot join the state in making this leap. We conclude that a *Robinson* violation must be treated as a constitutional violation which is subject to the derivative evidence rule.

As developed by our supreme court, the *Robinson* rule is *not* an extension of the *Miranda* requirement of warnings contemporaneous with arrest. Rather, it is a rule designed to implement *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68

L.Ed.2d 378 (1981), which requires custodial interrogation cease once an accused has invoked his right to counsel. *See State v. Robinson,* 427 N.W.2d at 222. The duty to clarify an ambiguous request for counsel, while it shares the fifth amendment basis with *Miranda,* may have nothing to do with the *Miranda* warning itself; the warning may not trigger the request. *See, e.g., State v. Howard,* 324 N.W.2d 216, 220 (Minn.1982) (defendant talked freely after *Miranda* warning, requested counsel only "[n]ear the end of the * * * conversation," when police revealed their evidence against him), *cert. denied,* 459 U.S. 1172, 103 S.Ct. 818, 74 L.Ed.2d 1016 (1983). In short, the *Robinson* defendant has taken a step, however equivocal, towards invoking his fifth amendment right, unlike the *Miranda* defendant, who has merely been *informed* of his fifth amendment right.

The *Robinson* rule is preventive. Thus, a violation may be found even though there has been no unequivocal request for counsel, and therefore no actual violation of the fifth amendment right to counsel. *Cf. Edwards v. Arizona,* 451 U.S. at 484–85, 101 S.Ct. at 1884–85 (request for counsel, to invoke fifth amendment right, must be clear and unequivocal). Nevertheless, the *Robinson* rationale is stated as an alternative to two other approaches which are not preventive rules, but rather ways of analyzing whether a clear and unequivocal request for counsel has been made. *State v. Robinson,* 427 N.W.2d at 222–23. If either the "bright line" or "totality of the circumstances" tests were met, *see id.,* a fifth amendment violation would be found and the derivative evidence rule would apply.

While each of the protections set out in the United States and Minnesota Constitutions is important, we believe that the right to counsel underlies all the rest. It is so fundamental that the strongest possible remedy must be employed to respond to a violation of this right. Because the *Robinson* rule springs so plainly from the constitutionally protected right to counsel, we conclude the trial court did not clearly err in applying the derivative evidence rule to a *Robinson* violation.

## III.

■ The state contends the trial court clearly erred in finding St. Paul police would not inevitably have discovered the St. Paul offense without the St. Louis Park confession.

The United States Supreme Court in *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), adopted the "inevitable discovery" exception to the derivative evidence rule. However, neither that Court nor our own supreme court has endorsed a more precise test for determining when inevitable discovery has been shown. *See, e.g., State v. Rodewald,* 376 N.W.2d 416, 422 (Minn.1985).

Doughty cites the following three-prong test developed in some federal circuit courts:

(1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct, (2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct, and (3) that the police also prior to the misconduct were actively pursuing the alternate line of investigation.

*United States v. Cherry,* 759 F.2d 1196, 1204 (5th Cir.1985); *see also United States v. Satterfield,* 743 F.2d 827 (11th Cir.1984), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985). The state cannot, as Doughty argues, meet the third, or "active pursuit" prong of this test. However, we do not base our decision upon this ground, or upon the adoption of the three-prong test.

St. Paul police had the De Noma "supplementary report" of the St. Paul offense before Doughty confessed. However, the status of that report is unclear. On at least two occasions after Doughty's confession, St. Paul police were unable to find the report. Sergeant De Noma himself did not testify.

St. Paul police also received, entirely independent of the Doughty confession, a phone call from the former employer of the victim and Doughty. This phone call, how-

ever, while it related telephone harassment of the victim by Doughty, could identify no assaultive behavior by Doughty. Moreover, as the trial court noted, St. Paul police did not, in response to this call, contact the other waitress whom the employer named.

Finally, there was considerable publicity concerning Doughty's arrest. The trial court, however, concluded it was too speculative to presume the victim's family would have reported the offense after reading these accounts.

The "inevitable discovery" exception "necessarily entails reasoning about hypothetical circumstances contrary to fact." *United States v. Feldhacker*, 849 F.2d 293, 296 (8th Cir.1988). Such an inquiry must be to some degree speculative. Yet the hypothetical fact, the police conduct that would have legally led to the evidence, must be established by a preponderance of the evidence. *Nix v. Williams*, 467 U.S. at 444, 104 S.Ct. at 2509. We conclude the trial court did not clearly err in finding the state failed to meet this burden.

First, we agree with the trial court's conclusion that it is too speculative to assume the victim's family would have reported the crime after earlier declining to formally do so. The state argues that the derivative evidence rule should not apply where the "fruit" is the testimony of a live witness. *See United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978). However, the supreme court in *Ceccolini* held only that live witness testimony being at stake as the suppressible "fruit" was a factor in determining whether the "taint" from the police misconduct had attenuated. *Id.* at 278–79, 98 S.Ct. at 1061–62. Attenuation of the taint is not an issue in this case, in which St. Paul police discovered the victim directly through the "tainted" confession. Moreover, the Supreme Court in *Ceccolini* rejected the absolute exemption of live witness testimony from the "fruit of the poisonous tree" doctrine.

Second, the trial court did not clearly err in concluding that, even with the De Noma report and the Weir phone call, St. Paul police would not inevitably have discovered the offense. Weir's call could have given police Doughty's name but no specific connection to a suspected crime. *Cf. State v. Seefeldt*, 292 N.W.2d 558, 560 (Minn.1980) (deputy had already made connection between defendant and specific crime). Further, Sergeant DeNoma did not testify, leaving the trial court with only speculation as to the exact status of his month-old report. Finally, because police did not follow-up Weir's phone call with respect to the other waitress, the state did not show S.C. would have been called without the illegal Doughty statement. *See United States v. White*, 549 F.Supp. 777, 779 (D.Ill.1982) (attorney's testimony of what investigative steps would have been taken with legally-acquired evidence was belied by government's actual "total non-use" of the lead).

## DECISION

The trial court did not clearly err in suppressing all evidence derived from respondent's confession.

Affirmed.

SHORT, Judge (dissenting).

I respectfully dissent. The trial court's suppression order is clearly erroneous because respondent's statements were voluntary and the dictates of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) were followed. Even if the trial court was correct in suppressing respondent's statements, the suppression order must be reversed because it is too broad and takes the derivative evidence rule beyond its useful limits. The deterrence value of excluding all evidence derived from this alleged *Robinson* violation is negligible at best where the St. Louis Park police had no reason to suspect respondent had committed other offenses and would not have questioned him concerning those activities absent his impromptu confession. At the very least, this case should be remanded for trial on the evidence that was not "compelled testimony" of respondent.