UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles Lowell KENTZ, Defendant–
Appellant.

No. 00–50186.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 2001

Filed June 1, 2001

Karen L. Landau, Oakland, California, for the defendant-appellant.

Michael J. Raphael, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: RYMER, HAWKINS, and RONALD M. GOULD, Circuit Judges.

RYMER, Circuit Judge:

The main issue we must decide is whether the district court is foreclosed from enhancing a sentence for an offense committed on pretrial release when the defendant has not been specifically warned in the pretrial release order that committing a new offense while on release would result in an additional enhancement pursuant to 18 U.S.C. § 3147 and its implementing guideline, USSG § 2J1.7.[1]

---

1. 18 U.S.C. § 3147 provides:
Penalty for an offense committed while on release.
A person convicted of an offense committed while released under this chapter shall be sentenced, in addition to the sentence prescribed for the offense to—
(1) a term of imprisonment of not more than ten years if the offense is a felony; or
(2) a term of imprisonment of not more than one year if the offense is a misdemeanor.

A term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment.
USSG § 2J1.7 provides:
*Commission of Offense While on Release*
If an enhancement under 18 U.S.C. § 3147 applies, add 3 levels to the offense level for the offense committed while on release as if

Charles Kentz, who was convicted on twenty-one counts of telemarketing fraud in violation of 18 U.S.C. §§ 1341, 2326 and 3147, challenges his sentence primarily on the ground that he was not given adequate notice in the pretrial release order that committing a new offense while released could lead not only to a new prosecution (which in fact happened), but also to an enhanced sentence under § 3147, which also happened. The district court held that specific notice in the release order was not required and that the notice actually given, of serious consequences for violating the conditions of release, was sufficient. We agree, and now join the majority of other circuits in holding that failure to give specific notice in the pretrial release order of the increased penalty in § 3147 (and USSG § 2J1.7) for being convicted of an offense committed while on release does not preclude the sentencing judge from imposing it. As no other issues require reversal, we affirm.

## I

Kentz ran telemarketing schemes in which he would call elderly victims and falsely tell them that they had won a large cash prize, but to redeem it they must send a check in advance for taxes or fees. When a victim was reluctant, Kentz would threaten suit, a collection action by the IRS, or forfeiture of social security payments. The first of his schemes was Associated Publishers, which he operated with Robert Walters. It took in over $500,000 before Kentz started Moon Bay Periodicals (by himself) in October 1998.

Kentz was arrested December 18, 1998 and posted bond the same day. The written release order set out a number of conditions of release, including that Kentz was forbidden from any form of telemarketing activities. He was also ordered not to commit any federal, state or local crime during the period of release. By signing the order, Kentz acknowledged that he understood that "violation of any of the general and/or additional conditions of release as given on the face of the bond may result in a revocation of release, an order of detention, and a new prosecution for an additional offense which could result in a term of imprisonment and/or fine."

Nevertheless, Kentz continued to engage in the telemarketing business (and to commit fraud) while on pretrial release. He worked through Moon Bay Periodicals and a new enterprise called Long Beach Discount. He called at least two victims in February 1999, including one whom he had defrauded in 1998, and received a check in February and another in March. Moon Bay and Long Beach produced $30,000. Altogether the three schemes involved more than 300 victims.

A First Superseding Indictment was returned June 15, 1999, charging Kentz with twenty-four counts of mail fraud in violation of 18 U.S.C. § 1341 (later redacted to eliminate three counts), and enhanced penalties pursuant to § 2326 because the mail fraud was committed in connection with telemarketing as well as pursuant to § 3147 because two of the counts involved offenses committed while he was on pretrial release. After a jury trial, Kentz was convicted on all twenty-one counts. He was sentenced to a term of 150 months on each of the mail fraud counts, a 10–month consecutive sentence pursuant to § 3147, and three years of supervised release.[2]

this section were a specific offense characteristic contained in the offense guideline for the offense committed while on release.

2. In calculating the sentence, the district court started from a base offense level of 6 for fraud, added 10 levels for the amount of loss, 2 for more than minimal planning, 2 for com-

Kentz was also ordered to pay $587,053.23 in restitution.

He timely appealed.

## II

### A

Kentz argues that his sentence could not be enhanced pursuant to USSG § 2J1.7 because he did not receive adequate notice in the pretrial release order that it could be. He relies on the legislative history, and the reasoning of a minority of circuits who hold that a warning by the releasing judge is required. *See United States v. Cooper*, 827 F.2d 991, 994–95 (4th Cir. 1987); *United States v. DiCaro*, 852 F.2d 259, 264–65 (7th Cir.1988); *United States v. Onick*, 889 F.2d 1425, 1433 (5th Cir. 1989). In their view, as *Cooper* explains, Congress did not intend § 3147 to apply when the notice requirements of § 3142 (which requires notice of the penalties for committing an offense while on pretrial release[3]) are not met. This is because the Bail Reform Act of 1984, which first mandated enhanced sentences for being convicted of crimes committed while on pretrial release, was based on the District of Columbia Release and Detention statute;[4] that statute required the judicial officer

authorizing release to warn of the enhancement of penalties for conviction of an offense while released, but also provided that giving of a warning "shall not be a prerequisite" to imposition of enhanced penalties; and § 3147, by contrast, omits any comparable provision. *Cooper*, 827 F.2d at 994–95. From the omission, these courts and Kentz conclude that Congress intended for a specific notice requirement to be read into § 3147.

The government, on the other hand, relies on the majority view that § 3147 does not require that a specific warning of its enhancement be given in the pretrial release order. *See, e.g., United States v. DiPasquale*, 864 F.2d 271, 280–82 (3d Cir. 1988); *United States v. Feldhacker*, 849 F.2d 293, 298–99 (8th Cir.1988); *United States v. Lewis*, 991 F.2d 322, 324 (6th Cir.1993); *United States v. Browning*, 61 F.3d 752, 755–57 (10th Cir.1995); *United States v. Bozza*, 132 F.3d 659, 661 (11th Cir.1998). *See also United States v. Vazquez*, 113 F.3d 383, 390 (2d Cir.1997) (indicating inclination to agree with Third and Sixth Circuits but refraining from resolving the issue conclusively because defendant received specific notice). These courts agree with our decision in *United States v. Patterson*, 820 F.2d 1524 (9th

---

mitting a fraud offense in connection with telemarketing, 3 for committing offenses on pretrial release, 2 for using a minor to make calls, 2 because of vulnerable victims, and 2 for a large number of vulnerable victims. In addition, the court found that this case was outside the heartland of fraud cases and that Kentz's conduct was unusually cruel or degrading and extremely harassing. For this, the court departed upward two levels. Given a criminal history category III, this resulted in a guideline range of 135–168 months.

**3.** Section 3142 provides in part:
   In a release order ... the judicial officer shall-
   (1) include a written statement that sets forth all the conditions to which the release

is subject, in a manner sufficiently clear and specific to serve as a guide for the person's conduct; and
   (2) advise the person of—
   (A) the penalties for violating a condition of release, including the penalties for committing an offense while on pretrial release;
   (B) the consequences of violating a condition of release, including the immediate issuance of a warrant for the person's arrest;
   . . .

**4.** D.C.Code Ann. §§ 23–1321 *et seq.* *See also* S.Rep. No. 225, 98th Cong., 2d Session (1984), *reprinted in* 1984 U.S.Code Cong. & Ad. News 3182, 3188, 3190–91, 3195, 3200, 3203–04, 3208–09.

Cir.1987), that § 3147 is not ambiguous. As we said there:

> Section 3147 is a sentence enhancement statute which simply mandates an enhanced sentence for someone who commits an offense while released on bail. There is nothing exceptional about the statute, nor is it vague or ambiguous. The language is plain and the meaning is clear.

*Id.* at 1526. Because the language of the statute itself does not require notice of the possibility for sentence enhancement, these courts reject the legislative history analysis of *Cooper.*[5] As *DiPasquale* put it, "[i]n our view, this rationale reads too much into what was *not* said by the legislative history and reads too little of what *was* said by the statute itself." 864 F.2d at 281.

■ This is an open question for us. *United States v. Night,* 29 F.3d 479, 480 n. 2 (9th Cir.1994) (noting circuit split). We now resolve it in accordance with the majority view. "We agree with the Third Circuit's treatment of the issue in *Di Pasquale.* Section 3147 clearly and unambig-uously mandates that the courts impose additional consecutive sentences on persons convicted of crimes they commit while released on bond. 'It is a self-executing and mandatory provision of law, addressed by Congress to sentencing courts.'" *Lewis,* 991 F.2d at 323 (quoting *Feldhacker,* 849 F.2d at 299).

■ There is no doubt in this case that Kentz knew he was subject to the provisions of § 3147 well in advance of sentencing. The government filed a "Notice of Enhanced Penalties" June 3, 1999;[6] the First Superseding Indictment indicated that the charges of telemarketing activity after Kentz's December 18, 1998 release are based on § 3147; and the PSR recommended an enhancement under § 3147 as calculated in USSG § 2J1.7. This both satisfies due process, and complies with the notice requirement in the Commentary to USSG § 2J1.7, which provides that "[a]n enhancement under 18 U.S.C. § 3147 may be imposed only after sufficient notice to the defendant by the government or the court...." USSG § 2J1.7, comment. (backg'd). As other

---

**5.** Nevertheless, if resort to legislative history were appropriate, it should be the history of the provision in question, § 3147. As to it, the Senate Report emphasizes that the defendant's penalty should be enhanced if he violates the "self-evident requirement" of not committing more crimes while on release:

> Section 3147 is designed to deter those who would pose a risk to community safety by committing another offense when released under the provisions of this title and to punish those who indeed are convicted of another offense. This section enforces the self-evident requirement that any release ordered by the courts include a condition that the defendant not commit another crime while on release. Given the problem of crime committed by those on pretrial release this requirement needs enforcement. Accordingly, this section prescribes a penalty in addition to any sentence ordered for the offense for which the defen-

dant was on release. This additional penalty is a term of imprisonment of at least two years and not more than ten if the offense committed while on release is a felony. If the offense committed while on release is a misdemeanor, this additional penalty is at least 90 days and not more than one year.

S. Rep. No. 98–225 at 34, *reprinted in* 1984 U.S.C.C.A.N. at 3217.

**6.** The Notice of Enhanced Penalties advises:

> Plaintiff United States of America ... hereby gives notice to defendant that he is subjected to an enhanced penalty of up to five or ten years imprisonment for telemarketing, pursuant to 18 U.S.C. § 2326, as well as an additional enhanced penalty of up to ten years for committing an offense while on pre-trial release, pursuant to 18 U.S.C. § 3147. The government hereby notifies defendant that it may seek one or both of these enhancements.

courts have held, this is a pre-*sentence* requirement rather than a pre-release requirement. *See United States v. Hecht,* 212 F.3d 847 (3d Cir.2000) (full discussion of § 2J1.7); *Bozza,* 132 F.3d at 661 (§ 2J1.7 does not require notice prior to guilty plea); *Vazquez,* 113 F.3d at 388–89 (discussing § 2J1.7 and noting that it suggests only pre-sentence notice required); *Browning,* 61 F.3d at 756–57 (PSR gave adequate notice for the court to apply § 2J1.7).

## B

■ Kentz also argues that § 3147 is unconstitutional on its face and as applied under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Apprendi* states that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. Kentz's position is that the district court plainly erred (which is our standard of review because Kentz failed to object on these grounds in the district court[7]) because the total sentence of 160 months (ten of which are attributable to § 3147) exceeds the statutory maximum of five years for fraud convictions in violation of 18

U.S.C. § 1341.[8] In addition, he contends that his rights to due process were violated because the issue of whether he committed an offense while on pretrial release was not charged in the indictment, presented to the jury, and determined by the jury beyond a reasonable doubt.

■ We do not see how *Apprendi,* or *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) and *Castillo v. United States,* 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000), upon which Kentz also relies, can invalidate § 1341 on its face. He does not suggest how the statute is incapable of being constitutionally applied, even if *Apprendi* or *Castillo* were to require the fact of committing an offense while on pretrial release to be tried to a jury and decided by a reasonable doubt standard. It could just be done this way. Further, Kentz recognizes that we have already held in *Patterson,* 820 F.2d at 1526, that § 3147 is a sentencing factor. While he invites us to overrule *Patterson* on the ground that it was undermined by *Castillo,* there is no need to consider the issue because Kentz has failed to show that his sentence is greater than the statutory maximum for the offenses of conviction,[9] or that his sub-

---

7. *United States v. Nordby,* 225 F.3d 1053 (9th Cir.2000).

8. As Kentz notes, in reality this came about because of the application of USSG § 2J1.7, which implements § 3147 by imposing a three-level increase to the base offense level. The Commentary instructs the court, in order to comply with the statute, to "divide the sentence on the judgment form between the sentence attributable to the underlying offense and the sentence attributable to the enhancement. The court will have to ensure that the 'total punishment,' (*i.e.,* the sentence for the offense committed while on release plus the sentence enhancement under 18 U.S.C. § 3147) is in accord with the guideline

range for the offense committed while on release, as adjusted by the enhancement in this section." USSG § 2J1.7, comment. (n. 2). Following this direction, the district court determined that Kentz's total guidelines sentence was 160 months, of which 150 months constituted the sentence on counts one through twenty-one for the underlying conduct and 10 months constituted the sentence for committing offenses while on pretrial release.

9. *See Ellis,* 241 F.3d at 1104 (declining to consider whether § 3147 is a separate offense because *Apprendi* threshold condition of sentence exceeding statutory maximum not met).

stantial rights are affected.[10]

■ Kentz was convicted on twenty-one counts of fraud, each bearing a five year maximum sentence. This amounts to 105 years. The government points out that if the total sentence to be imposed under the guidelines is greater than the statutory maximum on any single count of conviction, USSG § 5G1.2(d) requires the sentence to be imposed on one or more counts to run consecutively to the extent necessary to achieve the total punishment.[11] Kentz does not argue otherwise. Rather, he suggests that *Apprendi* precludes saving the sentence by "stacking" because the Court rejected the argument that the same amount of time could have been constitutionally imposed by way of concurrent sentences. 530 U.S. at 474, 120 S.Ct. 2348. The difference, however, is that we are reviewing for plain error. Because his sentence would have to be structured to come out the same way regardless, we cannot say that Kentz was in any way prejudiced or that the fairness of the proceedings was affected even if there were error. *See e.g., United States v. Page,* 232 F.3d 536, 542–45 (6th Cir.2000) (so holding), *cert. denied sub nom. Linton v. United States,* —— U.S. ——, 121 S.Ct. 1389, 149 L.Ed.2d 312 (2001); *United States v. White,* 238 F.3d 537, 541–43 (4th Cir.2001), *petition for cert. filed,* May 01, 2001 (No.

00–9732); *United States v. Sturgis,* 238 F.3d 956, 960–61 (8th Cir.2001); *United States v. Parolin,* 239 F.3d 922, 929–30 (7th Cir.2001) (affirming district court's use of § 5G1.2), *petition for cert. filed,* May 11, 2001 (No. 00–9999); *United States v. White,* 240 F.3d 127, 135 (2d Cir.2001) (same).

Moreover, as we shall explain in section IV, the district court did not plainly err in considering the statutory maximum to be fifteen years because that is the maximum penalty provided by 18 U.S.C. § 2326 for telemarketing which impacts more than ten victims over the age of 55. Finally, the charge on the counts on which Kentz was convicted that are subject to the § 3147 enhancement included the fact that the offense was committed while he was on bail and forbidden to engage in any form of telemarketing. He never contested that fact. In these circumstances, Kentz's substantial rights were not affected by any error in the application of § 3147 and § 2J1.7 that we must recognize.

### III

■■ Kentz further seeks reversal due to the two-level upward adjustment applied for a large number of vulnerable victims pursuant to USSG § 3A1.1(b)(2).[12] He first contends that the government

10. *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (for plain error the defendant must show that there was error, the error was plain, and the error affected substantial rights).

11. Section 5G1.2 (Sentencing on Multiple Counts of Conviction) provides in subparagraph (d):

(d) If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a

combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

12. Section 3A1.1(b) (Hate Crime Motivation or Vulnerable Victim) provides:

(b) (1) If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels. (2) If (A) subdivision (1) applies; and (B) the offense involved a large number of vulnerable victims, increase the offense level determined under subdivision (1) by 2 additional levels.

failed to show by a preponderance that there were 300 vulnerable victims. However, it is too late to question the number because the PSR found that Kentz defrauded over 300 mostly elderly victims and he never objected. Given the age of the victims who testified and evidence that it was the elderly whom Kentz targeted, and no evidence to the contrary, the finding is not plainly erroneous.

■ Assuming there were 300, Kentz maintains that this number of victims is not sufficient to trigger the adjustment. He notes that the guidelines do not define what a "large number" is, nor have we. Nonetheless, we have no difficulty concluding that the district court had discretion to find that 300 was large enough. We agree with Kentz that telemarketing is a mass marketing technique designed to reach a lot of people, but this does not mean that "large number of vulnerable victims" for purposes of § 3A1.1 should be construed as "larger than the average telemarketing fraud," as Kentz would have us do. It is true that some fraudulent telemarketing schemes involve thousands of victims, *see, e.g., United States v. Blitz*, 151 F.3d 1002 (9th Cir.1998) (1,100 victims); *United States v. Boula*, 932 F.2d 651 (7th Cir. 1991) (over 3,000 victims), while others involve fewer. *See, e.g., United States v. Scrivener*, 189 F.3d 944 (9th Cir.1999) (36 victims). But here, the district court found that 300 *vulnerable* victims was a large number, and nothing in the record indicates that this is not a "large" number either in absolute terms or by comparison with other frauds where vulnerable victims are impacted.

■ Finally, Kentz asserts that imposing the adjustment was double counting in light of the other adjustments that were imposed. However, double counting is not impermissible when it accounts for more than one type of harm. *United*

*States v. Parker*, 136 F.3d 653, 654 (9th Cir.), *cert. denied*, 525 U.S. 942, 119 S.Ct. 363, 142 L.Ed.2d 300 (1998). Enhancing for the amount of monetary loss, degree of planning, mass marketing, victimizing vulnerable victims during telemarketing, and impacting a large number of vulnerable victims, as the court did here, accounts for different aspects of the harm that Kentz's conduct caused. Further, "there is nothing wrong with 'double counting' when it is necessary to make the defendant's sentence reflect the full extent of the wrongfulness of his conduct." *United States v. Reese*, 2 F.3d 870, 895 (9th Cir.1993), *cert. denied*, 510 U.S. 1094, 114 S.Ct. 928, 127 L.Ed.2d 220 (1994). As the Sentencing Commission has explained, the increased penalty for a large number of vulnerable victims was designed to implement Congressional intent to increase penalties for fraudulent schemes, including telemarketing schemes having a large number of victims over the age of 55. *See* Amendment 857, Appendix C, November 2000 Supplement to the 1998 Sentencing Guidelines. In this way, § 3A1.1 builds upon the specific offense characteristic for mass-marketing, and is acceptable under *Reese*.

IV

Without developing the point, Kentz asserts that the case must be remanded for resentencing because the district court unlawfully imposed a sentence of 150 months on each count whereas the statutory maximum for a violation of U.S.C. § 1341 is five years. In addition, of course, it imposed a ten month consecutive term pursuant to § 3147. As Kentz acknowledges that the court could have imposed the sentences on certain counts to run consecutive to one another, there can't possibly be plain error that requires resentencing.

Beyond this, Kentz's indictment and sentence were based on 18 U.S.C. § 2326(2) as well as § 1341. Section 2326(2) prescribes an enhanced penalty with a statutory maximum of ten years when a person convicted of a fraud offense under § 1341 has victimized ten or more persons over the age of 55.[13] Thus, his total sentence of 160 months was well within the statutory maximum.

For the first time in reply, Kentz suggests this runs afoul of *Apprendi*. Aside from having waived the point by failing to raise it before, no error plainly appears. The indictment charged the age of eleven telemarketing victims, which ranged from 75–91 years; each testified about her age; and the jury convicted Kentz on all counts.

AFFIRMED.

---

13. Section 2326 provides:
§ 2326 Enhanced Penalties
A person who is convicted of an offense under section ... 1341 ..., in connection with the conduct of telemarketing—
(1) shall be imprisoned for a term of up to 5 years in addition to any term of imprisonment imposed under any of those sections, respectively; and

(2) in the case of an offense under any of those sections that—
(A) victimized ten or more persons over the age of 55; or
(B) targeted persons over the age of 55, shall be imprisoned for a term of up to 10 years in addition to any term of imprisonment imposed under any of those sections, respectively.